THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GUY PRESSLEY, Defendant-Appellant.

First District (5th Division)   Nos. 85—0699, 86—0815 cons.

Opinion filed August 28, 1987.

Steven Clark and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Christopher J. Cummins, and Sally Bray, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial defendant was found guilty of attempted murder, armed robbery, and unlawful restraint and was sentenced to serve eight years in the Illinois Department of Corrections. He appeals urging the following: (1) there were improper restrictions placed upon the scope of his cross-examination of the State's complaining witness; (2) evidence which tended to establish that he was not responsible for the crime was improperly excluded; (3) the prosecutor's comments during closing argument were improper and prejudicial; (4) his conviction for armed robbery was grounded on a defective information which was materially altered without reverification shortly before trial, thereby resulting in prejudice; (5) his armed violence conviction must be vacated because he was improperly convicted of both armed violence and the predicate offense of attempted murder; and (6) the trial court erred in denying his section 2—1401 (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) petition.

We reverse and remand for a new trial.

The following facts are pertinent to our disposition of this cause. On August 31, 1984, defendant was charged by information with at-

tempted murder, attempted robbery and armed violence against James Hope. On January 15, 1985, the State was permitted, over objection, to amend the information, without reverification, to include an armed robbery in place of the attempted robbery charge. Following a bench trial on January 29 and 30, 1985, defendant was found guilty of all three charges.

At trial the prosecution presented three witnesses: James Hope, Daniel Preston and Betty Hope. The following testimony was adduced at trial from these witnesses. Hope and defendant entered into an agreement whereby Hope purchased defendant's car. Hope obtained possession of the car in early February 1983 and agreed to make installment payments every few weeks. On April 8, 1983, Hope received a phone call at his home from defendant. Defendant requested that Hope make another payment on the car and the two of them agreed to meet the following morning at a restaurant. Daniel Preston (Hope's brother) and an unnamed mutual friend who was familiar with the area agreed to accompany Hope to the restaurant. The three of them arrived as scheduled but defendant was not there. Shortly afterwards, defendant's friend Mike arrived. Hope had previously been introduced to Mike by defendant.

Mike told Hope that defendant was waiting for the car payment "at the house." Hope and Mike then proceeded to the apartment building where defendant was waiting. While Hope's brother and his friend remained in their car, Hope entered the building. As Hope followed Mike through the vestibule doorway of the building, defendant appeared from behind the door with a pistol which he subsequently aimed at Hope's head. Defendant threatened to shoot Hope if he did not give him the money owed on the car. Defendant then ordered Hope to turn around. As he turned, Hope noticed that Mike also had a pistol in his hand. Defendant then told Mike to handcuff and gag Hope. In defense, Hope grabbed Mike's pistol and succeeded in knocking defendant's gun out of his hands. When defendant reached down to retrieve his gun, Hope grabbed defendant's hair and clasped his legs around defendant's head in order to immobilize him. Defendant began to stab him. Hope was then told to fall down onto the floor. After he fell, Mike gagged and handcuffed Hope. One of the men searched Hope's pockets and took his wallet containing $500 in cash and several credit cards. Defendant and Mike left the building, but defendant returned moments later to retrieve his gun. After locating the gun, he left.

Daniel Preston testified that he and a friend waited for his brother in their car, which was approximately 100 feet from the build-

ing. Preston saw Hope enter the building, and shortly thereafter he observed two white men run out of the building, run towards the backyard, and cut across an adjacent field. He viewed the men's faces for approximately 30 seconds. One of the men returned to the apartment building, remained inside a short while, and then ran out again. Preston recognized this man as the defendant because the two of them had previously met at Hope's house. Preston then got out of the car and walked toward the building, where he found his brother lying near the door. Hope had been handcuffed, had tape across his mouth and was bleeding from the chest. With the assistance of a neighbor named Mr. Papenleur, paramedics and police were summoned to the scene. While waiting for the ambulance, Hope told Preston that defendant had tried to kill him. Police officer Belice arrived on the premises. It was stipulated that Officer Belice would testify that he found Hope handcuffed. Hope was taken to St. Anthony's Hospital for treatment.

Brian and Charles Kall testified for the defense. Both testified that they were placed in a lineup with defendant on August 17, 1984. Both Kall brothers saw Hope standing in the doorway near the police lineup room during the lineup pointing at defendant.

Frederick Papenleur and his two sons, Fred, Jr., age 12, and Jimmy, age 11, also testified for the defense. They were tenants in the building where Hope was stabbed. On the morning of the attack, the Papenleurs heard arguing and fighting in the hallway which leads to the upstairs apartment. Mr. Papenleur stated that he overheard someone talking about "stabbing or killing." Jimmy testified that from his back window he saw two unidentified men run out the door from the second-floor apartment. However, Jimmy later admitted seeing only one of the men. He stated that defendant was not the man he saw on the day of the stabbing. Fred, Jr., testified that he was outside walking his dog when the stabbing occurred. He observed two men running through the yard. One of the men returned to the house and soon thereafter left. One of the men had a gun. Fred, Jr., did not recognize the defendant as one of the men he saw. He stated defendant has blond hair and the men he saw had black hair and were Mexican.

Defendant testified in his own behalf at trial. He stated that he was in Kentucky on April 8, 1984, and was not involved in the stabbing. He learned from his mother that two police officers had come to her house, and he returned to Chicago to find out what happened. He also testified that while he was involved in the lineup in August 1984 at the police station he saw Hope pointing at him.

The parties stipulated to the contents of a police report, based on an interview with Hope, which stated that offender number one was described as a white Hispanic wearing a blue-jeans jacket and blue jeans, 6 foot 1 inch, 190 pounds, age 22 to 23, eyes unknown, brown hair, and named Guy Pressley. Offender number two, a man named Mike, was described as a white male, 5 foot 10 inches, 150 pounds, wearing a brown jacket and blue jeans.

The prosecution called Hope in rebuttal. Hope stated that defendant was wearing a dark skullcap during the incident. He also testified that Mike, the second offender, had dark hair and a dark complexion, and looked Italian or Mexican.

Following closing arguments, defendant was found guilty of attempted murder, armed robbery and armed violence.

OPINION

■■ Defendant initially contends that improper restrictions were placed upon his ability to cross-examine Hope regarding potential interest, bias and motive to give false testimony. On cross-examination Hope was asked whether he had filed a claim with the Victim Compensation Division of the Attorney General's Office as a result of the incident. Under the Illinois Crime Victims Compensation Act, the victim of a violent crime may be entitled to compensation for his injuries. (Ill. Rev. Stat. 1985, ch. 70, par. 71 *et seq.*) Defendant contends that the cross-examination of Hope regarding a claim for compensation was designed to show interest, bias and motive to testify falsely and consequently was a proper subject for cross-examination. The prosecution maintains that while an applicant must agree to cooperate fully with law enforcement officials in the apprehension and prosecution of the assailant, the statute does not require that the offender be captured, incarcerated or convicted before an award is granted. We believe that the prosecution's position undermines the import of the sixth amendment.

The sixth amendment provides in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." (U.S. Const., amend. VI.)

Under the sixth and fourteenth amendments this right has been interpreted as a right to cross-examine a witness as to the witness' biases, interests, or motives to testify. *People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9.

In the case at bar, during the cross-examination of the complaining witness the following exchange occurred:

"MR. FAY: Q. Now, sir, you filed a claim with the Victim Compensation Division of the Attorney General's Office—

THE COURT: Sustained. What has that got to do with this?

MR. FAY: Judge—

THE COURT: What does it have to do with the charge, Mr. Fay? Tell me.

MR. FAY: I think it—

THE COURT: What does it have to do with the issue of guilt or innocence, Mr. Fay?

MR. FAY: There is a—

THE COURT: Tell me, please.

MR. FAY: There is a contemplation of a civil action.

THE COURT: Sustained."

■■ From the foregoing colloquy it would appear that there was no objection from the prosecution with regard to the scope of the questioning. On the contrary, even though cross-examination to show bias, interest, or motive to testify falsely is a matter of right which the trial court has no discretionary power to deny to the defendant (*People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9), unless the examination is repetitive or unduly harassing (*People v. Phillips* (1981), 95 Ill. App. 3d 1013, 420 N.E.2d 837), this trial judge raised this objection on his own motion and then granted it. The Crime Victims Compensation Act requires Hope to demonstrate that he fully cooperated in the prosecution of defendant and that his injury was not substantially attributable to him and not substantially provoked by him in order to support a claim. (Ill. Rev. Stat. 1985, ch. 70, par. 76.1.) These provisions of the Act raise the possibility that Hope's testimony may have been slanted to support his claim. The trial judge's conduct effectively prevented defense counsel from cross-examining the complaining witness and in a somewhat antagonistic manner prevented him from explaining the line of questioning. This conduct denied defendant his constitutional right to confront the witness against him.

■■ Defendant next contends that reversible error was committed when the trial court refused to allow defense counsel to continue questioning a witness about third parties who were found to be in possession of Hope's stolen credit cards several weeks after the robbery occurred. In response, the prosecution maintains that defendant waived the issue on appeal when he failed to raise this objection in his post-trial motion. However, the rule of waiver is a limitation on the parties and not on the courts, and a reviewing court may ignore the waiver rule in order to achieve a just result. (*People v. Hoskins*

(1984), 101 Ill. 2d 209, 461 N.E.2d 941.) Consequently, we will consider defendant's contention in the light of the manner in which the trial was conducted.

■ During direct examination of defense witness Papenleur, the trial judge sustained an objection to defense efforts to adduce evidence showing that the neighbors of Papenleur, and present residents of the apartment where the offense occurred, matched the offenders' descriptions and when arrested were found to be in possession of the complaining witness' credit cards, which were taken in the robbery. The prosecution asserts that the evidence was properly excluded because it was tenuous and could not establish a close connection between the third person and the crime itself. While this argument is well taken, it is misplaced in light of the trial judge's conduct.

The examination in issue proceeded as follows:

"Q. [By defense counsel Mr. Fay]: Now does the name Domingo Berraras mean anything to you?

A. That is the people [*sic*] that live upstairs.

Q. Describe the Berraras—

MR. VICTORSON: Objection.

THE COURT: Sustained.

MR. FAY: I will tie it up.

THE COURT: Give me an offer of proof.

MR. FAY: Currently the parties that were arrested with credit cards are current residents—

THE COURT: Sustained. It is not relevant.

MR. FAY: Your Honor—

THE COURT: It is not relevant to any issue in the case.

MR. FAY: Identification, Your Honor.

THE COURT: No, it isn't. I won't let you put in any extraneous matters.

MR. FAY: Additionally, Your Honor—

THE COURT: Sustained."

The cases cited by the prosecution on appeal stand for the proposition that evidence is admissible only if a close connection can be demonstrated between the third person and the commission of the crime. (See *People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696; *People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590; *People v. Smith* (1984), 122 Ill. App. 3d 609, 461 N.E.2d 534; *People v. Bryant* (1982), 105 Ill. App. 3d 285, 434 N.E.2d 316.) However, in contrast with those cases, the trial judge in this cause exacerbated the issue by failing to allow defense counsel to submit a complete offer of proof with regard to the excluded evidence. The right to make an offer of proof in order to

show the relevancy of certain evidence affords the trial court the opportunity to make an informed decision, thereby guaranteeing defendant a fair trial. (See *People v. Stefanov* (1981), 93 Ill. App. 3d 85, 416 N.E.2d 1185.) The trial judge here in an abrupt fashion prevented defense counsel from making an offer of proof which may have justified his line of questioning. Even though this witness did not observe the attack, he may have been able to give a general description of the people who were found to be in possession of the stolen credit cards. The description may have matched the descriptions given by the eyewitnesses of the assailant and could have lent credence to defendant's version. Defendant was precluded from bolstering his defense by demonstrating that descriptions of the assailant and neighbors upstairs are similar.

■ For reasons not evident from the record, this able trial judge, who generally displays judicious temperament, was in this case hostile toward this defendant and his counsel. The impatient attitude of the trial judge toward defense counsel, as indicated in the colloquy above, persisted throughout the trial. The trial judge repeatedly directed defense counsel to "tie things up." While it is not improper for the trial judge to express impatience about undue time being consumed, such remarks must be made with great caution or they may be prejudicial error. (*Katsinas v. Colgate-Palmolive-Peet Co.* (1939), 299 Ill. App. 347, 20 N.E.2d 127.) Additionally at one point in the trial the trial judge made the following admonishment:

> "THE COURT: Sustained. He already said Mexican. If you would listen to what your witness is saying you wouldn't have to put him in a box. You are worse then he is."

Certainly a trial judge is permitted a limited amount of impatience. But in a close case, partial or biased remarks have a greater impact and increase the likelihood that the case will be reversed. Some of the instances we have noted in isolation may have been proper, or not reversible error, or had sufficient justification under the circumstances. However, taken together the remarks had the cumulative effect of depriving defendant of a fair trial. It would unnecessarily lengthen this opinion to outline each instance in which the court displayed impatience. The record is replete with manifestations of hostility directed toward this defendant which necessarily denied him a fair trial. (See *People v. Moriarity* (1966), 33 Ill. 2d 606, 213 N.E.2d 516.) Accordingly, we reverse and remand for a new trial.

■ In light of the foregoing determination we will address those remaining issues which may arise on remand. Defendant next contends that it was improper for the prosecutor to comment during clos-

ing argument on the defendant's failure to produce witnesses who could corroborate his testimony, where the prosecution had interjected these potential witnesses into the case. On direct examination, defendant testified that he had been in Kentucky on the day the incident occurred. During cross-examination of the defendant, the prosecutor brought out the fact that the defendant had been staying with his family in Kentucky. Then, in closing argument, the prosecutor made the following statement:

"[T]he people in Kentucky that [defendant] was visiting are his own family. I think it's reasonable to assume that if he really was in Kentucky—

MR. FAY: Objection to that, Judge.

THE COURT: Overruled.

[Prosecutor]: They would have been here, they would have been here to tell you, no. He was in Kentucky with us on that day *** ."

In *People v. Blakes* (1976), 63 Ill. 2d 354, 348 N.E.2d 170, our supreme court held that it was not improper for the prosecutor to comment on defendant's failure to produce any witnesses from the club where defendant had testified he spent five hours on the night of the crime. If a defendant injects into a case his activities with potential witnesses during a particular period of time ostensibly for the purpose of establishing an alibi, his failure to produce such witnesses is a proper subject of comment on the part of the prosecution. (*People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247.) Consistent with *Blakes* and *Kubat*, where defendant states that he was at a particular place at a time certain and then fails to call a witness to corroborate that story, the prosecutor may comment on that witness' absence.

Defendant's contention that his conviction for armed robbery was grounded on a defective information which was materially altered without reverification shortly before trial need not be addressed in detail. Suffice it to say, the alteration was merely a formal defect causing no prejudice to defendant.

■ Defendant next contends that his armed violence conviction must be vacated because he was improperly convicted of both armed violence and the predicate offense of attempted murder. We disagree. The evidence establishes that the victim was stabbed five times. One stab wound alone can support an attempted murder charge, while the other four stab wounds clearly comprise an armed violence charge. Consequently, the offenses were not based upon the same act.

■ Defendant also contends that he was not proven guilty of armed violence because the State failed to show that the victim was

stabbed with a knife that had a blade at least three inches long. A person is guilty of armed violence if he commits any felony while armed with a dangerous weapon. (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2.) A dangerous weapon is defined as a "knife with a blade of at least 3 inches in length *** or any other deadly or dangerous weapon or instrument of like character." (Ill. Rev. Stat. 1985, ch. 38, par. 33A—1(b).) Defendant was specifically charged with armed violence based upon the use of a knife with a blade of at least three inches long. He contends that the State failed to prove that the knife was a minimum of three inches. But, for such a charging discrepancy to merit a new trial it must be material and of such character as may mislead the accused in preparing his defense or expose him to double jeopardy. (*People v. Zuniga* (1981), 99 Ill. App. 3d 396, 425 N.E.2d 1094.) In light of the fact that defendant could not have had a successful defense had he proven that the knife involved was less than three inches (*People v. Jones* (1984), 128 Ill. App. 3d 842, 471 N.E.2d 590), we find the variance to be immaterial.

Because of our disposition of this cause, we need not discuss defendant's final contention regarding the sufficiency of his petition for new trial.

Reversed and remanded for a new trial.

SULLIVAN, P.J., and PINCHAM, J., concur.