THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ELMER ECKERT, Defendant-Appellant.

Fifth District   No. 5—87—0371

Opinion filed March 2, 1990.

Daniel M. Kirwan and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, and Anthony J. Peraica, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

After trial before a jury in the criminal court of St. Clair County, Elmer Eckert was found guilty of two counts of aggravated criminal sexual assault and sentenced to serve 14 years' imprisonment concurrently on each count.

The victim in this case was defendant's 13-year-old daughter. The victim testified at trial that the defendant first sexually assaulted her when she was in the fourth or fifth grade. She did not report this incident to her mother because her father warned her not to, and because she feared her mother would not believe her. It wasn't until the summer of 1985 that she told her mother that the defendant was abusing her. The child testified that in the summer of 1985 the defendant assaulted her twice in their home. The first incident involved the defendant putting his penis in the victim's mouth, feeling her breasts and putting his finger in the child's vagina. The second assault occurred when the defendant stuck his penis in the victim's mouth, moving it back and forth.

Defense counsel on cross-examination of the witness asked questions to elicit whether the child believed her father was too much a

disciplinarian, that he drank too much and fought with her mother to the point that the child felt life would be more peaceful had her father not been there. The State objected to such questions, and the following discourse ensued:

"Q. Okay. Now, did your father also in the summer of '85, did your father also accuse you and your brother of taking some money from him?

A. Yes.

Q. He accused you of taking approximately, what, a hundred dollars worth of change? If I'm wrong, just tell me I'm wrong.

A. Huh-uh.

Q. What did he accuse you of about the money?

A. Just—.

MS. FRANKE: Your Honor, I'm going to object again, number one, it's beyond the scope of direct examination and it's irrelevant.

THE COURT: Beyond the scope of direct examination.

MR. STORMENT: May I approach the bench? May we—

THE COURT: (indicates negatively)

MR. STORMENT: I can't approach the bench?

THE COURT: Come on, Paul, I've tried cases too, ask the girl the questions.

Q. (by Mr. Storment) During this course of the summer of '85, did he also, when he got mad, did he also say there wasn't going to be any Christmas?

A. I can't remember.

Q. You can't remember that? Did your mother say—did your mother indicate that she was going to buy you bicycles for Christmas?

A. Yes.

Q. And did he say that you weren't going to get any bicycles for Christmas?

A. Yes.

Q. Now, in the summer of '85, did you think in your mind—now, again, we need to know, we need for you to tell us the truth, and I need to ask you these questions. In the summer of '85, did you feel like that life would be more peaceful if your father wasn't there?

MS. FRANKE: I object to that, Your Honor.

MR. STORMENT: This is—Your Honor.

THE COURT: Objection will be sustained.

MR. STORMENT: I'll have to make an offer of proof. Can

we approach the bench for an offer of proof?

THE COURT: Proceed.

MR. STORMENT: Your Honor, I'd like to make an offer of proof. I need to make an offer of proof. I'm trying to defend a person whose [sic] accused of a serious crime. I have to make an offer of proof at this time. If you are sustaining the objection, I need to make an offer of proof.

THE COURT: Paul, the direct examination took about thirty minutes, you've taken an hour so far. Sit down. Go back to the cross examination properly.

MR. STORMENT: May I please make an offer of proof?

THE COURT: No, you can't approach the bench. I don't want you up here.

MR. STORMENT: Can I make an offer of proof?

THE COURT: Turned off my hearing aid, can't hear a word you are saying.

MR. STORMENT: Then I'd like to ask the question again. Do you think life would have been more peaceful had your father not been present in the home?

MS. FRANKE: I object, Your Honor.

THE COURT: Why?

MS. FRANKE: He asked the same question that has previously been sustained.

MR. STORMENT: This is my defense to the case.

THE COURT: It's very easy to cross examine her. She has testified to certain things. You have a right to ask her about those things. You don't have the right to go back into the whole life span of the child. Get to the pertinent points.

MR. STORMENT: I merely asked her one question. Well, can I ask her—did you want your father to leave the home?

A. I don't know.

Q. Is life more peaceful now that your father is not there?

MS. FRANKE: I object to that question, Your Honor.

MR. STORMENT: This is my entire defense, Your Honor.

THE COURT: To what? You object to what?

MS. FRANKE: The question he asked, whether or not life is more peaceful in the home now without her father.

THE COURT: What does that have to do with the charge?

MS. FRANKE: That's my objection, Your Honor.

THE COURT: All right. It will be sustained.

MR. STORMENT: Your Honor, I think I have to protect the record and make an offer of proof. I think it's a matter of right

for this defendant to make an offer of proof in this case.

THE COURT: Paul, I'm deaf and getting deafer."

Defense counsel continued with his cross-examination, after which the victim's 12-year-old brother took the stand. His testimony corroborated the incidents which his sister reported as having occurred in 1985, in that both times he witnessed his father sexually assaulting his sister.

The children's mother, Judy Eckert, testified as to what her children reported to her regarding their father's conduct. We will not go into detail herein as to her testimony as it is of little significance to the issues in this appeal.

Conrad Williams, the child abuse investigator for the Department of Children and Family Services, testified as to the procedures and findings of his investigation in this case. During cross-examination defense counsel asked whether many allegations of child sexual abuse are made by mothers estranged from their husbands and whether many of the cases the witness investigates are totally unfounded. The court sustained the State's objection to this line of questioning, and this exchange took place between defense counsel and the court:

"Q. And are a lot of—are a lot of mothers that are enstrained from—estranged from their husbands, are they making these?

MS. FRANKE: Again I object to this being irrelevant.

THE COURT: Objection will be sustained.

Q. Are a lot of the calls that you investigate, do you determine that they are totally unfounded?

MS. FRANKE: Again that is irrelevant to this case.

MR. STORMENT: Your Honor, how am I—[?]

THE COURT: Wait a minute, we had direct examination, your cross examination is bound by the boundaries of the direct examination. Now, follow it along that way and we will get along all right, otherwise we will be here all day. We won't accomplish anything, and I'll go to sleep. Ask the question the way you should.

MR. STORMENT: Well, Your Honor, I'm cross examining the witness on a serious felony case.

THE COURT: Don't make a speech to me, I can't hear you.

MR. STORMENT: Why—very well then. Are many of the investigations that you find in the Cahokia area unfounded?

MS. FRANKE: Again, I object, it's beyond the scope.

THE COURT: Let him answer.

Q. (by Mr. Storment) Is that correct, sir?

A. Some are unfounded.

THE COURT: All right. That's an answer enough.

Q. Are many reports made by estranged wives against husbands unfounded?

MS. FRANKE: Again, Your Honor—.

THE COURT: I'll sustain that objection.

MR. STORMENT: Well, Your Honor, will you ask the witness to remain?

THE COURT: You are shooting goose shot hoping to hit something. No.

MR. STORMENT: I'm trying to defend my client.

THE COURT: I know what you are trying to do. You are trying to louse up the case, too. Get on with the case.

MR. STORMENT: May I make an offer of proof on that?

THE COURT: You can make anything you want, I can't hear you.

MR. STORMENT: Then I would approach—do I approach the Court Reporter to make my offer of proof?

THE COURT: If she wants to hear you. I'm going to turn my hearing aid off.

MS. FRANKE: I would ask that any offer of proof be taken outside the scope of the hearing—.

THE COURT: Debbie, go in there, sit in the hallway, take it, come back. Offer of proof is not for the jury to hear.

MR. STORMENT: I think I should ask—.

THE COURT: An offer of proof you tell what the witness will state if you ask him the question. That's what an offer of proof is. Go ask it."

At that time counsel made his offer of proof outside the jury's and the trial judge's presence.

The State's final witness was Terrence McFarland, a police officer with Cahokia Village in St. Clair County. Officer McFarland testified that upon his request the defendant came down to the police station for questioning. The defendant waived his *Miranda* rights and freely gave a signed, written statement wherein he admitted that he engaged in oral sex with his daughter on two occasions. The defendant took the stand in his own behalf and denied the veracity of the written statement. He explained that although he admittedly made the statement, he did so only because he was tired of the aggravation and the questions, and he wanted to go home. Mr. Eckert testified that there were a lot of lies in the statement which was taken by Officer McFarland. He stated that he made the statement after promises had been made to him by the officer that he would not seek prosecution of the case if

the defendant consented to making the statement.

At the conclusion of the evidence, but in the presence of the jury, the trial court and defense counsel had the following exchange:

"THE COURT: That will take it up to five o'clock. I have no intention of sitting here and keeping the jury so they don't go out to consider a case until after five o'clock. This is Friday, they wouldn't be thinking about the case, thinking about home and their children. We will recess this case until 9:30 Tuesday morning.

MR. STORMENT: Your Honor, I am scheduled to go to trial in Williamson County, have been, so—.

THE COURT: Guess what? You won't go.

MR. STORMENT: That's the nicest words I've heard. You'll call the Judge down there and inform him?

THE COURT: Tell that Judge anything you want. Tell him I don't care about him.

MR. STORMENT: But I don't want to be in jail. You won't be in jail.

THE COURT: I won't be.

MR. STORMENT: You'll square it with him?

THE COURT: Right.

MR. STORMENT: Thank you.

\* \* \*

THE COURT: Look at poor Paul, he'll be in jail.

MR. STORMENT: I'll send my closing remarks from the jail."

■■■ Defendant's first contention on appeal is that he was denied a fair trial where the trial judge repeatedly expressed hostility toward defense counsel and erroneously denied defense counsel the opportunity to present his case effectively. In all criminal prosecutions the accused is entitled to a fair and impartial trial by jury. (*People v. Marino* (1953), 414 Ill. 445, 450, 111 N.E.2d 534, 537; *People v. Kelley* (1983), 113 Ill. App. 3d 761, 767, 447 N.E.2d 973, 977.) The right of a defendant to an unbiased, open-minded trier of fact is so fundamental to our system of jurisprudence that it should not require either citation or explanation. It is rooted in the constitutional guaranty of due process of law and entitles a defendant to a fair and impartial trial before a court which proceeds, not arbitrarily or capriciously, but upon inquiry, and renders judgment only after trial. (*People v. McDaniels* (1986), 144 Ill. App. 3d 459, 462, 494 N.E.2d 1275, 1277-78.) Jurors are ever conscious of the trial judge's attitude. The judge's influence upon them is of great weight; thus, his slightest remark or intimation is received

with deference and may prove controlling. In a criminal trial, a hostile attitude toward an accused, or his witnesses is very apt to influence the jury in arriving at its verdict. (*People v. Marino*, 414 Ill. 445, 451, 111 N.E.2d 534, 537.) The trial judge must exercise a high degree of care to avoid influencing the jurors in any way, to remain impartial, and to not display prejudice or favor toward any party. *People v. Sprinkle* (1963), 27 Ill. 2d 398, 401, 189 N.E.2d 295, 298.

We do not believe this to be a case of harmless error. (See *People v. Merz* (1984), 122 Ill. App. 3d 972, 461 N.E.2d 1380; *People v. Heidorn* (1983), 114 Ill. App. 3d 933, 449 N.E.2d 568.) The trial judge's remarks not only conveyed an impression to the jury that he felt defense counsel was not doing his job properly, but also that the defense was wasting the court's time.

■■ The Code of Judicial Conduct prescribes that a judge should be patient, dignified, and courteous to litigants, jurors and witnesses, lawyers and others with whom he deals in his official capacity. (107 Ill. 2d R. 63A(3).) Likewise, the A.B.A. Project on Minimum Standards for Criminal Justice, Standard 6—3.4, provides that "when it becomes necessary during the trial for the judge to comment upon the conduct of witnesses, spectators, counsel or others, or upon the testimony, the judge should do so in a firm, dignified, and restrained manner, avoiding repartee, limiting comments and rulings to what is reasonably required for the underlying progress of the trial, and refraining from unnecessary disparagement of persons or issues." The record in the instant case, considered in its entirety, shows that the trial judge's conduct in the presence of the jury denied defendant a fair and impartial trial.

Coupled with the judge's improper comments, improper restrictions were placed upon defense counsel's ability to cross-examine both the victim and the investigator in the case. The prosecution maintains that a trial court has substantial discretion to determine the manner and scope of cross-examination, and in this case there is no showing of a clear abuse of that discretion, resulting in manifest prejudice, to warrant a reversal. We believe the prosecution's position undermines the import of the sixth amendment.

■■■ The sixth amendment provides in pertinent part:
"In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***." (U.S. Const., amend. VI.)
Under the sixth and fourteenth amendments this right has been interpreted as a right to cross-examine a witness as to the witness' biases, interests, or motives to testify. (*People v. Pressley* (1987), 160 Ill. App.

3d 858, 862, 513 N.E.2d 921, 924.) The trial judge's conduct effectively prevented defense counsel from cross-examining the complainant and the investigator, and in an antagonistic manner tried to prevent him from making an offer of proof to preserve the record. This conduct denied defendant his constitutional right to confront the witnesses against him.

It is a well-settled rule of law that it is error for the trial court to refuse to permit counsel to make an offer of proof. (*In re Estate of Undziakiewicz* (1964), 54 Ill. App. 2d 382, 385, 203 N.E.2d 434, 436.) In the instant case, the trial judge acted improperly in refusing to allow counsel the opportunity to make his offer of proof. Although counsel did later make his offer of proof, it was only after disparaging remarks to defense counsel were made in the presence of the jury by the trial judge. In addition, defense counsel made his offer of proof without the benefit of having the trial judge present. The court's insistence that it would not listen to any offer of proof made by the defense effectively prevented defense counsel from showing the trial judge the relevance of certain evidence so that the judge could make an informed decision as to admissibility. (*People v. Pressley* (1987), 160 Ill. App. 3d 858, 864-65, 513 N.E.2d 921, 926.) The purpose of an offer of proof is to indicate to the trial court, opposing counsel and a reviewing court the substance of the evidence expected to be offered. (*Daehler v. Oggoian* (1979), 72 Ill. App. 3d 360, 369, 390 N.E.2d 417, 424.) " 'Just as the objection is the key to saving for review any error in admitting evidence, the offer of proof is the key to saving error in excluding evidence.' " (*Miller v. Chicago Transit Authority* (1966), 78 Ill. App. 2d 375, 383, 223 N.E.2d 323, 327, quoting Professor Cleary in his Handbook of Illinois Evidence, §7.7, now E. Cleary & M. Graham, Handbook of Illinois Evidence §103.7, at 17 (4th ed. 1984).) The judge's conduct herein was impermissible.

Some of the instances of misconduct by the court, which we have noted, may not have been enough in isolation to rise to the level of reversible error. However, taken together the remarks had the cumulative effect of depriving defendant of a fair trial. Accordingly, we reverse and remand for a new trial.

In light of the foregoing determination, we need not address the issue raised by defendant that the trial court abused its discretion in sentencing defendant to 14 years' imprisonment.

Reversed and remanded.

RARICK and GOLDENHERSH, JJ., concur.