FIRST DIVISION
 April 14, 1997

No. 1-95-1368

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the 
 ) Circuit Court of
 Plaintiff-Appellee, ) of Cook County.
 )
 v. ) 
 )
MUOI PHUONG, ) Honorable 
 ) CHARLES LOVERDE,
 Defendant-Appellant. ) Judge Presiding.

 JUSTICE BUCKLEY delivered the opinion of the court:

 Following a bench trial, defendant, Muoi Phuong, was found
guilty of misdemeanor retail theft and sentenced to one year of
supervision with a $90 fine. Defendant appeals, raising the
following issues: (1) whether defendant, a Chinese-speaking
recent immigrant with minimal education in this country and no
criminal history, understandingly waived her right to a jury
trial where she was not advised that she could have members of
the community decide her guilt or innocence; (2) whether
defendant received a fair trial where the trial court expressed
its bias by repeated and gratuitous remarks relating to the
Chinese language spoken by defendant and a defense witness; (3)
whether defendant was deprived of a fair trial when the trial
court refused to allow full translation of the testimony of a
Chinese-speaking defense witness; (4) whether the trial court
unfairly assumed the role of an advocate when it called and
elicited hearsay statements from a police officer about receipts
recovered from defendant when the officer had observed the entire
trial despite an order to exclude witnesses; (5) whether the
testimony of the police officer about the contents of sales
receipts recovered from defendant were improperly admitted into
evidence where the documents themselves were not produced; (6)
whether defendant was proven guilty of retail theft beyond a
reasonable doubt where no competent evidence of the corpus
delicti was presented and where defendant did not know about her
companion's shoplifting; and (7) whether the trial court
improperly assessed a fine of $90 without inquiring into
defendant's ability to pay.
 Defendant, Muoi Phuong, is a Chinese-speaking woman who had
recently immigrated to the United States and who had received a
few months of education in this country. Prior to her being
charged with and convicted of retail theft in March 1995,
defendant had no criminal record or any dealing with the American
criminal justice system.
 Before trial, defendant signed a jury waiver form that had
been translated by a Chinese interpreter. The trial court
informed defendant that she could be tried by either a judge or a
jury without further elaboration. When defense counsel informed
the trial court that defendant had agreed to a bench trial, the
trial court commented "Nothing like a bench trial with a Chinese
interpreter." Prior to trial, a motion to exclude witnesses was
granted.
 Testimony concerning the theft came primarily from a Carson
Pirie Scott (Carson's) employee, Veronica Miranda. Miranda
testified that on December 2, 1994, she was working at the
Carson's in Lincolnwood. On that date, Miranda saw a woman in
the department store taking unspecified merchandise from the
racks and putting it into her shopping bag. Miranda then saw
another woman, identified as defendant, enter the store through
the upper mall door and speak with the first woman. The first
woman was identified as Hoag Huynh, defendant's friend and co-
worker. Huynh laid the merchandise from her shopping bag on the
floor and showed the items to defendant. Huynh then gave a long
ivory-colored skirt to defendant, who put the skirt into her
shopping bag. Miranda testified that the skirt had been for sale
at Carson's. Miranda did not see defendant take any merchandise
off of the racks or put any other items into her shopping bag. 
Defendant left the store and Miranda did not see her pay for the
skirt.
 Miranda then followed defendant around the shopping mall and
watched her go into other stores. Defendant was apprehended 30
to 40 minutes later by Miranda, who stated that she took custody
of defendant and the items in her possession. Huynh was not with
defendant when she was apprehended by Miranda. Carson's
employees contacted the Lincolnwood police, who arrived after
defendant had been brought to the Carson's security office. The
police searched defendant's car and found the skirt there, still
inside the shopping bag that defendant had been carrying in
Carson's. Miranda testified that Carson's had a videotape
recording of the events that had occurred in the store, but that
it could not be located for trial.
 Miranda testified that defendant told her in English that
defendant's friend passed the merchandise to her. Miranda does
not speak any Chinese and did not use an interpreter to speak to
defendant. Miranda testified that defendant seemed to understand
what Miranda was saying to her.
 The police arrested both defendant and Huynh and charged
them with retail theft. Huynh later pled guilty to the charge. 
At trial, Huynh testified through a Chinese interpreter that she
and defendant were co-workers and that on December 2, 1994, they
went to the Lincolnwood mall with a third friend. Huynh stated
that she did not see defendant take anything from the store
without paying for it. She also testified that she and defendant
did not plan together to steal anything from the store, nor did
she tell defendant that she was going to steal anything. 
 Huynh admitted to shoplifting on December 2 but denied that
one of the items she stole was a woman's skirt. She claimed that
"it was just a nipple for a milk bottle." Over the objection
from defense counsel, the trial court instructed the Chinese
interpreter not to translate the rest of Huynh's response,
stating "She plead [sic] guilty to shoplifting. What other items
she took I'm not concerned about really." Huynh denied giving
defendant anything to put in her bag. According to Huynh,
defendant paid for the skirt and obtained a receipt. She
testified that a police officer took the receipt and told the
women that the receipt was not from the same day.
 Defendant also testified at trial. When she began her
testimony, defendant was asked in English to state her name and
spell her last name for the record. She did so. Then, defense
counsel requested that defendant testify through a Chinese
interpreter so that she may be better understood, and the trial
court commented, "Miss Public Defender, we're going to be here
until the [F]ourth of July." Later in her testimony, defendant
responded to the question "On December the 2nd, of 1994, did you
steal anything from Carson Pirie Scott?" by shaking her head
"no." The trial court stated, "She's shaking her head in
Chinese, no." Defendant testified that she paid for the skirt
before leaving the store. 
 Defendant stated that after she was stopped in the mall,
neither the police, Miranda, nor any other Carson's employee
spoke with her. The court responded to this line of questioning
by stating, "Nobody speaks Chinese that I know of except this
lady. So, the policeman doesn't talk to her in Chinese and
neither does anybody from Carson's. So what?"
 Defendant acknowledged that she understood what the police
meant when they showed her the skirt and asked for the receipt. 
Defendant told the police, "Friend got receipt." Defendant
further testified that she did not know who had the receipt now;
her friend told her the police took the receipt. 
 After both the State and the defense had rested their cases,
the trial court called Officer Cahill to testify over defense
counsel's objections. Officer Cahill had been present in the
courtroom during the entire trial. Officer Cahill testified that
he obtained receipts from defendant in the course of his
investigation. None of the receipts were for the skirt. The
receipts were dated a month prior to her arrest and were from
Marshall Field's department store. The receipts themselves were
not presented at trial. Officer Cahill testified that defendant
spoke some English with him, although it was broken English. 
 The trial court found defendant guilty of retail theft,
stating "There's no question in my mind as to the guilt of the
defendant with or without English." The court also found that
the absence of the Carson's videotape of the alleged theft was
not significant. On March 7, 1995, the court sentenced defendant
to one year of supervision and imposed a $90 fine. On April 5,
1995, defendant filed a motion for a new trial, which the court
denied on April 19, 1995. On that same date, defendant filed
timely notice of her appeal.
 Defendant raises seven distinct issues on appeal; however,
the issue of overriding concern is that of personal bias shown by
the trial court against defendant. "The right of a defendant to
an unbiased, open-minded trier of fact is *** rooted in the
constitutional guaranty of due process of law and entitles a
defendant to a fair and impartial trial before a court which
proceeds not arbitrarily or capriciously, but upon inquiry, and
renders judgment only after trial." People v. Eckert, 194 Ill.
App. 3d 667, 673, 551 N.E.2d 820, 824 (1990). Although a trial
judge has great latitude in the courtroom, his or her discretion
is not without limit. "The standard of judicial conduct requires
a judge to be fair and impartial whether the defendant has a jury
trial or a bench trial." People v. Cofield, 9 Ill. App. 3d 1048,
1051, 293 N.E.2d 692, 694 (1973). When, as in this case, a judge
displays signs of bias against the defendant, the system ceases
to function as it properly should, resulting in plain error and
requiring reversal. See People v. Carlson, 79 Ill. 2d 564, 404
N.E.2d 233 (1980) (when trial error is so prejudicial that the
accused has been denied a fair and impartial trial, the doctrine
of plain error applies).
 In this case, the record reveals numerous derogatory
statements made by the trial court directed against defendant,
her counsel and a defense witness. Upon defense counsel's
request for a Chinese interpreter for defendant, the trial court
stated "Nothing like a bench trial with a Chinese interpreter." 
When defendant took the stand in her own defense, the trial court
again expressed impatience with the need for an interpreter by
stating, "Miss Public Defender, we're going to be here until the
[F]ourth of July." After defendant responded to a question by
shaking her head, the court stated "She's shaking her head in
Chinese, no." While defendant was being asked about any
conversations she might have had with the police or Carson's
employees immediately following her apprehension, the court
interrupted by stating, "What does that establish, Miss Public
Defender? Nobody speaks Chinese that I know of except this lady. 
So, the policeman doesn't talk to her in Chinese and neither does
anyone from Carson's. So what?" During the testimony of defense
witness Huynh, the trial court refused to allow the interpreter
to translate a complete answer, stating "What other items she
took I'm not concerned about really." Moreover, the trial court
referred to defense counsel as "Miss Public Defender" several
times during the trial without ever addressing the female
prosecutor in a similar fashion. Finally, in ruling on the
evidence, the trial court stated, "There's no question in my mind
as to the guilt of the defendant with or without English." We
find that these remarks, taken together, establish the trial
court's prejudice against defendant. 
 The State attempts to argue that since defendant and defense
witness Huynh were able to understand rudimentary English and
spell their names for the court in English, the trial court, by
its comments, was merely expressing skepticism concerning their
need to testify through an interpreter. This argument lacks
persuasiveness, however, since it is entirely plausible that
although defendant and Huynh displayed an understanding of basic
English words and an ability to respond in broken sentences,
their mastery of the English language did not rise to the level
of being able to testify in court in that language. 
 The State also insists that the trial court's comments do
not demonstrate error since there was no jury present to be
influenced by their utterances. However, the State is clearly
oblivious of the high standard to which judges are held. Judges
are required to be fair and dispassionate arbitrators above all
else. Accordingly, any showing of bias against one of the
parties or her counsel constitutes reversible error. See Eckert,
194 Ill. App. 3d at 674, 551 N.E.2d at 824-25 ("The Code of
Judicial Conduct prescribes that a judge should be patient,
dignified, and courteous to litigants, jurors and witnesses,
lawyers and others with whom he deals in his official capacity");
People v. Mays, 188 Ill. App. 3d 974, 982-83, 544 N.E.2d 1264,
1270 (1989) (finding that the trial court demonstrated prejudice
against the defendant where the judge slammed a pencil, heaved a
sigh and made facial gestures in response to defense counsel's
question). It is irrelevant that this was a bench trial and
there was no jury to be swayed by the court's comments. The fact
that the judge, who was the fact finder in this case, was giving
voice to his impatience and sarcasm is enough to show prejudice. 
See People v. Ojeda, 110 Ill. App. 2d 480, 249 N.E.2d 670 (1969)
(in a bench trial, the court's improper remarks are prejudicial
when they reflect a preconceived attitude about the defendant's
guilt). Based on the numerous insulting remarks made by the
trial court against defendant, we cannot be sure that defendant
received a fair trial by an impartial arbitrator. On this issue
alone, we must reverse her conviction. Nonetheless, we will
address defendant's remaining claims.
 We also find that defendant did not knowingly and
understandingly waive her right to a jury trial, as evidenced by
the record. This right is protected by both the United States
and Illinois Constitutions. U.S. Const., amends. VI, XIV; Ill.
Const. 1970, art. I, 8. The trial court has the obligation to
ensure that a jury waiver is made with an understanding of the
nature of the rights waived, and that duty may not be discharged
in a superficial manner. People v. Sebag, 110 Ill. App. 3d 821,
828, 443 N.E.2d 25, 30 (1982). See People v. Smith, 106 Ill. 2d
327, 333-34, 478 N.E.2d 357, 360 (1985) (also explaining that
this issue is not waived by the defendant's failure to include it
in his post-trial motion since it affects a substantial right). 
The determination of whether the trial court has fulfilled its
obligation turns on the facts and circumstances of each case and
cannot be governed by a mechanistic formula. People v. Bell, 104
Ill. App. 2d 479, 480, 244 N.E.2d 321, 322 (1968). An
explanation of the ramifications of a jury waiver must be made
when the facts and circumstances indicate that a defendant may
not understand what the right to a jury trial entails. See Bell,
104 Ill. App. 2d at 481, 244 N.E.2d at 322. The trial court is
warned to be particularly careful to ascertain whether a jury
waiver is made knowingly where a defendant does not speak
English. See People v. Kostatinovich, 98 Ill. App. 3d 611, 614,
424 N.E.2d 864, 866 (1981).
 The record here reveals that defendant testified at trial
through a Chinese interpreter. Although defendant signed a form
jury waiver that had been translated for her, it is unclear that
she actually understood what a jury is. The trial court warned
defendant about waiving her right to a jury trial, but she was
not informed that a jury trial meant that members of the
community would serve as fact finders in her case. If defendant
did not understand the nature of a jury or its function within
the system, then she would not understand the ramifications of
her waiver of that right. We simply are not convinced that the
mere translation of the language of the waiver form adequately
conveyed its meaning to defendant. See People v. Turner, 80 Ill.
App. 2d 146, 150-51, 225 N.E.2d 65, 67 (1967) (despite an out-of-
court conference with the judge, an illiterate defendant did not
understandingly waive his right to a jury trial where the judge
failed to inquire if defendant knew what a jury trial was).
 Moreover, as defense counsel points out, there is nothing to
indicate that defendant had any prior experience with the
American judicial system to warrant an understanding of a jury
trial. Defendant had only a few months of education in this
country and had no prior criminal record or any involvement with
the criminal justice system. See Sebag, 110 Ill. App. 3d at 829,
443 N.E.2d at 31 (where the defendant was not advised of the
meaning of a jury trial and was not familiar with criminal
proceedings, the record did not establish that the defendant
understandingly waived his right to a jury trial). Thus, we
agree that defendant did not knowingly waive her right to a jury
trial.
 We next find that the State failed to prove defendant guilty
of the crime charged beyond a reasonable doubt. The relevant
question is whether, after reviewing the evidence in the light
most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 61 L.
Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); People v. Young,
128 Ill. 2d 1, 49, 538 N.E.2d 461, 472-73 (1989). For the
offense of retail theft, the State must prove the following
elements: (1) the defendant knowingly took possession of,
carried away or caused to be carried away, any merchandise; (2)
the merchandise was displayed, held, stored, or offered for sale
in a retail mercantile establishment; and (3) the defendant
intended to retain such merchandise, or intended to deprive the
merchant permanently of the possession, use, or benefit of such
merchandise, without paying the full retail value of such
merchandise. People v. Liner, 221 Ill. App. 3d 578, 580, 582
N.E.2d 271, 272 (1991). Under Illinois law, proof of the corpus
delicti may not rest exclusively on a defendant's confession or
statement, but rather the State must present evidence apart from
that which tends to show the commission of the offense and which
corroborates the confession. People v. Howard, 147 Ill. 2d 103,
126-27, 588 N.E.2d 1044, 1052-53 (1991). 
 In this case, not only did defendant's statement to Miranda
fail to constitute a confession, but the State produced no
independent evidence tending to show that defendant committed
retail theft. Miranda's testimony that defendant told her that
her friend passed her the merchandise does little to incriminate
defendant since the State failed to show that defendant was even
aware that Huynh had stolen the skirt. In fact, Huynh testified
that she and defendant had not planned together to steal anything
from the store, nor did she tell defendant that she was going to
steal anything. Absent some showing by the State that defendant
knowingly took the skirt and intended to keep it without paying
for it, defendant cannot be found to have committed retail theft. 
That defendant merely ended up with the skirt in her possession
will not suffice.
 Miranda testified that Carson's had a videotape of the
entire incident but that it had been misplaced prior to trial. 
It seems to us that if the State could have presented a videotape
that showed defendant committing the offense, it certainly would
have done so. That it failed to do so indicates that the tape
contained no incriminating evidence. Miranda further testified
that Carson's did sell the ivory skirt found in defendant's
possession, but the State failed to assert that sales tags were
on the skirt when defendant received it. It is possible that if
the tags had been removed from the skirt prior to the time that
Huynh "passed" it to defendant, defendant would have no reason to
know, or even suspect, that the merchandise had not been paid
for. Because the State presented no competent evidence at trial
that showed that defendant perpetrated retail theft, the State
failed to prove defendant guilty of the offense charged beyond a
reasonable doubt.
 For the foregoing reasons, we reverse defendant's
conviction. The issue of the $90 fine is therefore moot.
 Reversed.
 CAMPBELL, P.J., concurs.
 O'BRIEN, J., dissents.
1-95-1368

 Justice O'Brien concurring in part and dissenting in part.
 I concur with the majority one issue only: that the
comments of the trial court regarding defendant's use of a
foreign language cast doubt upon the fairness and impartiality of
the trial court and thus, this cause should be reversed. 
Although the cases cited by the majority contain a more troubling
situation than the case at bar, fundamental fairness dictates
such a result. However, unlike the majority, I would remand for
a new trial as there is sufficient evidence to find defendant
guilty beyond a reasonable doubt.
 On review, when confronted with a challenge to the
sufficiency of the evidence, the relevant inquiry for a reviewing
court is whether, after viewing the evidence in the light most
favorable to the People, any rational trier of fact could have
found the essential elements of the offense beyond a reasonable
doubt. People v. Collins, 106 Ill. 2d 237, 478 N.E.2d 267
(1985). A court of review applies this standard regardless of
whether the evidence is direct or circumstantial. People v.
Pintos, 133 Ill. 2d 286, 549 N.E.2d 344 (1989). The reviewing
court is not permitted to substitute its judgment for that of the
trier of fact on questions involving the weight to be assigned
evidence or the credibility of witnesses. People v. Campbell,
146 Ill. 2d 363, 586 N.E.2d 1261 (1992). Accordingly, a judgment
of conviction will not be disturbed unless the evidence presented
at trial is so "unreasonable, improbable, or so unsatisfactory as
to justify a reasonable doubt of the defendant's guilt
[citation]." Campbell, 147 Ill. 2d at 375.
 Despite the assertion of the majority that the People's case
rested solely upon the statements of the defendant, the People's
evidence was that an eyewitness saw the defendant stop and speak
with a friend within Carson's, take possession of and carry away
merchandise of Carson's which had been offered for sale and fail
to pay for that merchandise. The skirt was found in defendant's
car in the same shopping bag in which she had placed it. 
Additionally, in defense, defendant testified she paid for the
skirt before leaving the store and that her friend received the
receipt. Her friend testified defendant paid for the skirt and
defendant received the receipt. Her friend further testified
that she never gave anything to defendant to take from the store. 
Any rational trier of fact, when viewing this evidence, the
inferences drawn from it and the credibility of the witnesses in
the light most favorable to the People, could have found the
essential elements of the offense beyond a reasonable doubt. 
Accordingly, a remand is appropriate.
 Finally, the majority makes three comments which are
troubling. First, they address the issue of the knowing
understanding of the jury waiver when, clearly, the defendant has
waived this issue by failing to mention it in her post-trial
motion. People v. Enoch, 122 Ill. 2d 176, 22 N.E.2d 1124 (1988). 
Second, the majority asserts that the failure of the People to
present a videotape of the occurrence indicates the tape contains
no incriminating evidence. The majority cites no reported case
holding such a presumption as a matter of law. And, the record
shows the tape was merely misplace. Third, the majority asserts
that the trial court's reference to the female public defender as
"Miss Public Defender" without addressing the female prosecutor
in the same fashion is indicative of actual bias by the court. 
Perhaps, the trial court just did not know the lawyer's name. In
any event, the majority cites no reported case holding that we
must presume the term "Miss Public Defender" is indicative of
actual bias by the court. Accordingly, I concur in part and
dissent in part.