THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TONY RIVERS, Defendant-Appellant.

First District (4th Division)   No. 1—96—0731

Opinion filed January 8, 1998.

WOLFSON, J., specially concurring.

Rita A. Fry, Public Defender, of Chicago (Z. Peter Tokatlian, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and Arnold H. Park, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CERDA delivered the opinion of the court:
Following a jury trial, defendant, Tony Rivers, was convicted of

aggravated kidnapping (720 ILCS 5/10—2(a) (West 1992)), two counts of aggravated criminal sexual assault (720 ILCS 5/12—14(a) (West 1992)), and armed robbery (720 ILCS 5/18—2(a) (West 1992)). He was sentenced to 50 years' imprisonment. The issue on appeal is whether the trial court's comments to defense counsel and to a potential juror were so prejudicial that they denied defendant a fair trial. For the following reasons, we affirm.

Defendant complains of several remarks made toward defense counsel outside the jury's presence. When the defense counsel made a motion for a continuance prior to jury selection, the court stated:

> "It's almost impossible to explain to anybody why this case would have taken so long. But just listening to you snivel and cry and whine about a reason for a continuance is almost enough to make a grown man want to throw up."

During jury selection, the following discussion between the trial court and a prospective juror occurred:

> "[JUROR]: I'm biased toward the defendant, because I also think that the State's Attorney has the leverage in the case.
>
> I also think it's very difficult for anyone poor to get a fair and impartial trial in America.
>
> Having said that, I would probably weigh the facts.
>
> * * *
>
> THE COURT: All I'm asking you, can you wait, even with these readily accepted preconceived notions and understanding—friendship with the Public Defender's [sic], understanding that on alot of cases poor people—and I disagree with you, you know, starting with the O.J. case, that is an Assistant Public Defender defense. That is the age-old conspiracy. That is a million dollar lawyer who got luckier than any other lawyer in history."

After the potential juror was excused by the State, defense counsel moved for a mistrial. During the discussion on the motion, the following occurred:

> "[DEFENSE COUNSEL]: I think some cumulative comments by the Court regarding the O.J. Simpson case has [sic] left this jury polluted, Judge.
>
> * * *
>
> THE COURT: Well, sir, make your objections as to the time that you're troubled about them, and make them timely.
>
> [DEFENSE COUNSEL]: How can I say that in front of the jurors?
>
> * * *
>
> I'm making the objection now because now is the timely time to do it. I'm not—
>
> THE COURT: Well, I don't think it's timely because the jury isn't still here."

After denying the motion for a mistrial, defense counsel continued to argue his position. The court stated:

"I heard you the first time. I heard you the first time. Unless you want to spend the night with your client in custody, I would expect you to argue your motions and receive the ruling. Any back talk by you will not be tolerated by this Court. Any conversations about your inability transferred to the ability of this Court to be fair and impartial will not be allowed.

Okay. You have already made all the motions you're going to make as far as why this case should be continued. Your other dilatory practices at this time are considered just dilatory practices, and I will rule on any motion that you make at a timely time."

Prior to opening statements, defendant told the trial court that he was taking psychotropic drugs and had told his attorney about the medication. Because defense counsel did not request a fitness hearing, the State asked for an immediate hearing on defendant's fitness to stand trial. After the hearing, the following discussion occurred between the trial court and defense counsel:

"THE COURT: First of all the Defendant said that he told you he was taking this medication and it affected his ability, and wanted you to file for a behavior clinic; is that true or false.

[DEFENSE COUNSEL]: Are you ordering me?

THE COURT: I'm not ordering you to do anything. I ask you to act like a lawyer in regards to this case. An allegation has been made that is quite frightening to this court in regards to your handling of the case. Now I don't know. It's been my opinion that you are willing to give up your license to help someone get a not guilty; that's clear to me that you're willing to do almost anything to prevail in a lawsuit, including call yourself incompetence [sic]. Now whether or not this is borne out by the facts only time will tell."

Later, in camera, the following occurred during a discussion on an evidentiary matter:

"[DEFENSE COUNSEL]: What the identification exception to the hearsay rule is, is when a person making the identification goes that's him. What they did here was—I think the record should reflect the Judge walked out of the chambers in the middle of my argument.

THE COURT: You saw me walk out of chambers?

[DEFENSE COUNSEL]: I believe I was—

THE COURT: I was opening my door.

[DEFENSE COUNSEL]: I apologize.

THE COURT: You better apologize. You're about ready to go in custody with your client! We're going to have several hearings in

this case. Give me one more look like that, pal, and you will be in custody. Now I am tire [*sic*] of you acting like this poor hurt little child. Now you either strap it up and get on with this trial, and make your objections, and quit picking on everything I do as some personal animosity that you're showing for me. Because I have none for you. I have a lot of disappointment for you, but no animosity."

During cross-examination of a police officer, in front of the jury, the following occurred:

"THE COURT: Again, it's not his report. If you would just ask these in regards to his partner's report. Just ask questions in regards to the facts solicited not the facts that you think. Ask questions in regards to the facts in this case.

[DEFENSE COUNSEL]: I believe he adopted the report when he says he read the report, he signed the report.

THE COURT: I don't believe he adopted the report. I heard what he said, and I heard him tell you he didn't make out the report. You knew he didn't make out the report. What you figure is not important. It's what is important that this witness says [*sic*]. So ask him questions in regards to the questions that he already answered."

Defendant relies on *People v. Heiman*, 286 Ill. App. 3d 102, 675 N.E.2d 200 (1996), which involved the same judge as in this case. Nevertheless, the two cases are very different. Not only was *Heiman* a bench trial, not a jury trial, but the trial court harbored preconceived notions regarding the defendant and his witnesses, which led to its rejection of the defendant's self-defense theory even before the defendant presented all his evidence.

Defendant also cites *People v. Eckert*, 194 Ill. App. 3d 667, 674, 551 N.E.2d 820 (1990), where a new trial was ordered because the trial court repeatedly expressed hostility toward the defense counsel in front of the jury and did not allow the defense counsel the opportunity to effectively present his case. *Eckert*, 194 Ill. App. 3d at 673-74.

■ A defendant is entitled to a trial that is free from a trial court's improper or prejudicial comments. *People v. Garrett*, 276 Ill. App. 3d 702, 711, 658 N.E.2d 1216 (1995). A fair trial contemplates that the jury will, alone, fulfill its duty of determining the facts, and it is not the province of the court, in a criminal case, to express by word or indicate by conduct, in the jury's hearing, any opinion on the facts. *People v. Marino*, 414 Ill. 445, 450, 111 N.E.2d 534 (1953). Jurors are ever watchful of the attitude of the trial court and its influence on them is necessarily and properly of great weight; thus, its slightest remark or intimation is received with deference and may be control-

ling. *People v. Vargas*, 174 Ill. 2d 355, 365, 673 N.E.2d 1037 (1996); *Marino*, 414 Ill. at 450-51; *Eckert*, 194 Ill. App. 3d at 673-74.

■ Hostile conduct by the court toward the defense counsel is a factor that may influence a jury to the prejudice of the defendant. *Marino*, 414 Ill. at 451. Nevertheless, the reviewing court must consider the record as a whole when determining whether the trial court harbored a belittling and resentful attitude toward the defense attorney and conveyed that attitude to the jury. *Marino*, 414 Ill. at 451. In the final analysis, a trial court's improper comments are reversible error only if the defendant can establish that the comments were a material factor in his or her conviction or had a probable effect on the jury's verdict. *Garrett*, 276 Ill. App. 3d at 712.

■ Considering the record as a whole, we conclude that the trial court's remarks in this case did not prejudice defendant. Most of the remarks were made outside the presence of the jury and, taken in context, did not show such animosity toward defense counsel that the trial court's attitude affected the jury. As indicated in the trial court's remarks during the hearing on defendant's motion for a new trial, the trial court admitted that it made some improper remarks toward defense counsel prior to the beginning of testimony, but changed its mind shortly thereafter. It appears from the record that the trial court changed its attitude toward defense counsel during the opening argument, when the court realized that the attorney was in fact prepared to try the case. There is nothing in the record to indicate that defendant was prejudiced by the trial court's remarks to the defense counsel either in front of or outside the presence of the jury.

Accordingly, we affirm the circuit court judgment.

Judgment affirmed.

McNAMARA, J., concurs.

JUSTICE WOLFSON, specially concurring:

I agree with the result reached, but I think more needs to be said about the trial judge's conduct.

The trial judge could have denied the defense a continuance without saying: "But just listening to you snivel and cry and whine about a reason for a continuance is almost enough to make a grown man want to throw up." The judge's language was unseemly and unprofessional. It has no place in a court of law, in or out of the jury's presence.

The jury could have been selected without the trial judge saying to a prospective juror: "and I disagree with you, you know starting

606

with the O.J. case, that is an Assistant Public Defender defense. That is the age-old conspiracy. That is a million dollar lawyer who got luckier than any other lawyer in history."

The reference to "an assistant public defender defense" clearly was intended to deprecate the efforts of lawyers who devote their energies to the defense of indigent people who sometimes do not have much of a defense. That is what lawyers are supposed to do. They should not have to bear insults from those whom we vest with grave authority to conduct judicial proceedings in a fair and dignified manner.

Of course, there are times when trial judges rightly become impatient and irritable. But these are the times when they must justify the confidence placed in them by the public. These are times for restraint, not anger; civility, not bullying; patience, not outburst. These are times for some judges to remember they, too, once stood before judges and vigorously urged the causes of clients who, for the uninformed, did not deserve such effort and such passion.