# Illinois Official Reports

## Appellate Court

---

**People v. Walker, 2016 IL App (2d) 140566**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LADELL WALKER, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-14-0566 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | July 21, 2016<br><br>August 17, 2016<br>August 17, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 13-CF-989; the Hon. Susan Clancy Boles, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Lucas Walker, all of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Victoria E. Jozef, both of State's Attorneys Appellate Prosector's Office, of counsel), for the People. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices Burke and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a jury trial in the circuit court of Kane County, defendant, Ladell Walker, was found guilty of two counts of unlawful delivery of a controlled substance within 1000 feet of a public park (720 ILCS 570/407(b)(2) (West 2012)) and two counts of unlawful delivery of a controlled substance within 1000 feet of a school (*id.*). He was sentenced to concurrent 12-year prison terms. The convictions stemmed from sales of cocaine to an undercover police officer that took place on October 9, October 12, October 23, and November 5, 2012. The sole question raised on appeal is whether the State proved beyond a reasonable doubt that defendant was guilty of the November 5, 2012, offense. We affirm.

¶ 2    Marcy Kogut, a detective assigned to the Elgin police department's drug unit, was the State's principal witness. Her duties included undercover investigations. Using a false identity, she posed as a drug buyer and disseminated a telephone number at which dealers could reach her. On October 9, 2012, at 11:42 a.m., she received a telephone call from a number ending with the digits 4617. The caller identified himself as "Face." Kogut indicated that she was busy and would call back later. At 5:37 p.m., Kogut placed a call to the 4617 number. She recognized the voice of the person who answered as the man who had called from that number earlier. Kogut indicated that she was interested in getting some "stuff" later on. Kogut called the 4617 number again at 7:27 p.m., but no one answered. At 8:13 p.m., she received a call from the 4617 number. She again recognized the caller's voice as that of the man who called himself "Face." She asked if she could meet him to buy $50 worth of crack cocaine. He told her to meet him at a McDonald's restaurant. She responded that she would meet him there if she could find somebody to watch her children.

¶ 3    At 8:27 p.m., Kogut sent a text message to the 4617 number to indicate that she was able to meet with Face. Another detective, Adam Arnold, provided her with $50 with which to purchase the cocaine. Kogut then drove to the McDonald's and texted the 4617 number to notify Face that she had arrived. At 9:18 p.m. she received a call from the 4617 number. When she answered, she recognized Face's voice. Face instructed Kogut to drive to a park. Face called her two more times while she was en route and once more after she arrived in the vicinity of the park. Face told Kogut that someone should be approaching her. A woman whom Kogut recognized to be Carolyn Williams approached Kogut's vehicle. Kogut gave Williams $50, and Williams handed Kogut a clear plastic bag containing a white rock-like substance. The transfer occurred 36 feet from the entrance to Cornerstone Park in Elgin.

¶ 4    After obtaining court authorization to record calls that she made to or received from the 4617 number, Kogut placed a call to that number on October 11, 2012, at 4:38 p.m. Nobody answered. She tried again at 5:02 p.m. but, again, did not speak with anybody. A minute later, however, Kogut received a call from the 4617 number. She recognized the caller, by voice, as Face. She asked him if she could buy more drugs from him. He agreed and told her to meet him at McDonald's. Kogut met with Arnold, who supplied money to purchase the drugs. Arnold also showed Kogut a photograph of defendant. Kogut proceeded to the McDonald's. She was equipped with an audio-recording device with which to record the transaction. When Kogut arrived at the McDonald's, she called the 4617 number. Face answered. He instructed Kogut to drive to a Wendy's restaurant. At 6:07 p.m., while Kogut was en route, Face called again from the 4617 number. Kogut told Face that she had just pulled into the Wendy's parking lot. Defendant approached her vehicle and got into the passenger's seat. He instructed her to

proceed to a location just west of the site of the October 9, 2012, transaction. When they arrived, she gave defendant $50 that she had received from Arnold. She told defendant that she did not feel comfortable accompanying him to obtain the drugs. Defendant made a telephone call. She heard defendant say, "J.J., come here." Defendant then exited the vehicle and walked away. A man whom Kogut recognized as John Johnson approached the vehicle and handed her a clear plastic bag containing a "white powder rock-like substance." Johnson asked Kogut for money. Kogut responded that she had already paid defendant. She then called the 4617 number. Defendant answered and confirmed that Kogut had paid for the drugs. At that point Johnson left, and Kogut drove away. At 6:24 p.m., Kogut received a call from defendant from the 4617 number. He had called to make sure that Kogut had received the drugs. The location where Johnson delivered the "white powder rock-like substance" to Kogut was 182 feet from Cornerstone Park.

¶ 5    On October 19, 2012, Kogut placed a call to the 4617 number. She did not speak with anybody. At 5:01 p.m. she received a call from the 4617 number. She did not recognize the caller's voice. Kogut testified that she "spoke with an individual that was not the defendant" and then hung up. About 14 minutes later, she received another call from the 4617 number, and she recognized defendant's voice on the telephone. Kogut asked defendant who had made the previous call. Defendant said that he had made the call and that he did not recognize Kogut's voice. Defendant said that it sounded like Kogut was speaking Spanish. Defendant then asked Kogut if she wanted to buy Xanax pills. Kogut responded that she would buy three pills along with $50 worth of cocaine. However, defendant did not have any cocaine to sell, so no transaction was arranged at that time.

¶ 6    Kogut spoke with defendant again by telephone on October 22, 2012. She indicated that she would call him again the next day. She called the 4617 number at 5:59 p.m. on October 23, 2012. Defendant answered, and Kogut asked if she could buy more crack cocaine. Defendant told her to drive to a specified location and to call again. Kogut obtained $50 from Arnold. Outfitted with concealed audio-recording equipment, Kogut proceeded to the specified location. Defendant called Kogut again from the 4617 number at 6:18 p.m. He directed her to a new location—an apartment complex on Illinois Avenue. Defendant called again at 6:34 p.m. and told Kogut to come into the apartment complex. Kogut responded that she was not comfortable doing so. The conversation ended, and Kogut drove away. A few minutes later, defendant called again and told Kogut that she could remain outside the apartment complex. Kogut returned to the apartment complex and received two more calls from defendant from the 4617 number. In the second call, he asked her if she saw a woman walking toward her vehicle. Kogut observed a woman in a white T-shirt and glasses. Kogut subsequently identified that woman as Silvia Magallanes. Kogut handed $50 to Magallanes, and Magallanes gave her a clear plastic bag containing a "white rock-like powder substance." The transaction took place 486 feet from Ellis Middle School.

¶ 7    Kogut testified about exchanges of text messages on October 29, 2012, and November 5, 2012. Prior to that testimony—and in accordance with a ruling on a motion *in limine* by defendant—the trial court instructed the jury as follows:

> "Evidence that a witness had a conversation through text messaging is being offered at trial and it is not being offered for the truth of the matter asserted but to explain the actions taken by the witness and may be considered by you only for that limited purpose."

- 3 -

Kogut testified that, on October 29, 2012, she received a text message from the 4617 number, asking, " 'What up[?]' " Kogut replied with a text message asking, " 'Are you going to be around tomorrow at four?' " She received an affirmative response and concluded the exchange of text messages by indicating that she would call at that time. Kogut called the 4617 number the following day, but nobody answered. She then sent a text message to the 4617 number. She received no response. On November 5, 2012, Kogut sent a text message to the 4617 number asking, " 'You going to be around at four?' " She received an affirmative response. She then asked where she should go, and she received a text message stating, " 'Illinois Avenue.' " Kogut asked, " 'Same place as last?' " The text message she received in reply said, " 'Yes.' "

¶ 8    As she had done in the past, Kogut met with Arnold, who provided cash with which to purchase drugs. She again wore a concealed audio-recording device. She drove to the location where the October 22, 2012, transaction had taken place. After another exchange of text messages with the 4617 number, Magallanes approached Kogut's vehicle and handed her a clear plastic bag containing a white rock-like substance. The parties stipulated that the substances Kogut received on October 9, October 11, October 23, and November 5, 2012, contained cocaine. The audio recordings of Kogut's calls to or from the 4617 number and of the second, third, and fourth drug transactions were admitted into evidence.

¶ 9    Defendant does not challenge the sufficiency of the evidence to sustain convictions for the first three transactions. The sole issue on appeal is whether the State presented sufficient evidence to sustain a conviction in connection with the final transaction, which took place on November 5, 2012. A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). When we review a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and determining what inferences to draw, and a reviewing court ordinarily will not substitute its judgment on these matters for that of the trier of fact. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

¶ 10    Although defendant never personally delivered cocaine to Kogut, the State prosecuted him under the principles of accountability. Guilt under a theory of accountability may be established with evidence that, either before or during the commission of an offense, the defendant solicited, aided, abetted, or agreed or attempted to aid another in the planning or commission of the offense and did so with the intent to promote or facilitate the commission of the offense. 720 ILCS 5/5-2(c) (West 2012). Defendant does not dispute that Kogut was able to identify his voice. Thus, Kogut's testimony clearly proved that defendant aided in the commission of the first three offenses. What sets the fourth transaction apart from the first three, however, is that Kogut did not speak with defendant. The fourth transaction was arranged entirely by means of text messages. Defendant argues that "to prove that [defendant] had anything to do with the fourth delivery, the State had to prove he sent the text messages from 4617 to Kogut's phone and/or directed Magallanes to deliver the cocaine to Kogut." According to defendant, the State failed to meet this burden inasmuch as it did not prove that defendant owned the telephone associated with the 4617 number, and the evidence shows that at least one other person had access to that telephone. We disagree.

- 4 -

¶ 11    Whether or not defendant owned the telephone in question, there was considerable evidence that defendant was the telephone's primary user. Defendant used the telephone repeatedly to contact Kogut in order to arrange drug transactions. Similarly, Kogut was able to reach defendant on numerous occasions through the 4617 number. There is no evidence that anyone other than defendant ever answered a call at that number. It is true that, on one occasion, Kogut received a call placed from the 4617 number and did not believe that defendant was the caller. About 10 minutes later, however, defendant did place a call to Kogut from the 4617 number, and he claimed that he had also placed the previous call. Defendant indicated that he did not recognize Kogut's voice.

¶ 12    Defendant's consistent use of the telephone with the 4617 number for voice communications is compelling circumstantial evidence that defendant sent the text messages that Kogut received on November 5, 2012. "Circumstantial evidence is 'proof of facts and circumstances from which the trier of fact may infer other connected facts which reasonably and usually follow according to common experience.' " *People v. McPeak*, 399 Ill. App. 3d 799, 801 (2010) (quoting *People v. Stokes*, 95 Ill. App. 3d 62, 68 (1981)). It was reasonable to infer that the cell phone belonged to defendant and that he sent the text messages. But even if someone other than defendant sent the text messages on November 5, 2012, defendant would still be accountable for delivery of cocaine if he provided the telephone to a third party and intended that it be used to set up a drug deal. It is possible, of course, that the telephone was used without defendant's knowledge or that defendant provided the telephone to a third party for an innocent purpose. The trier of fact was not obligated, however, to elevate the possibility to a reasonable doubt. Accord *People v. Milka*, 336 Ill. App. 3d 206, 228 (2003) ("A jury is not required to accept a reasonable hypothesis of innocence and elevate it to the status of reasonable doubt.").

¶ 13    At trial, defendant moved to bar Kogut from testifying about the text messages she received on November 5, 2012. Defendant argued that, without evidence of the identity of the telephone's "actual owner," the State was "unable to actually establish the identity of the speaker." This was, in substance, a challenge to the authenticity of the text messages. Rule 901(a) of the Illinois Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Ill. R. Evid. 901(a) (eff. Jan. 1, 2011). In this case, that would entail proof that the text messages were either from defendant or from someone acting on his behalf. Rule 901(b)(4) of the Illinois Rules of Evidence indicates that evidence can be authenticated by "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Ill. R. Evid. 901(b)(4) (eff. Jan. 1, 2011). Here, that means that the State could rely on the use of the 4617 number, in connection with the first three transactions, to authenticate the text messages. Defendant argues that "the substance of the texts [may not] be used to satisfy the State's burden [of proof] where the text message testimony was allowed only for the limited purpose of explaining Kogut's actions, not as substantive evidence." The argument is meritless. The State relied on the text messages themselves only to show what led Kogut to engage in a drug transaction on November 5, 2012. By linking defendant to the cell phone associated with the 4617 number, the State was able to establish that text messages from that number were sent by defendant or on his behalf. Because that evidence did not depend on the substance of the text messages, it did not run afoul of the trial court's limiting instruction.

¶ 14    For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 179 (1978).

¶ 15    Affirmed.