# Illinois Official Reports

## Appellate Court

---

### *People v. McGath*, 2017 IL App (4th) 150608

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCUS E. McGATH, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-15-0608 |
| Filed | September 21, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, No. 15-CF-25; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Salome Kiwara-Wilson, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Randy Yedinak, State's Attorney, of Pontiac (Patrick Delfino, David J. Robinson, and Luke McNeill, State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Appleton and Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1  Following a May 2015 trial, a jury convicted defendant, Marcus E. McGath, of unlawful delivery of a controlled substance (720 ILCS 570/401(d) (West 2014)). In July 2015, the trial court sentenced him to 25 years in prison.

¶ 2  Defendant appeals and raises several arguments: (1) the State failed to prove him guilty beyond a reasonable doubt, (2) he received ineffective assistance of counsel when his trial counsel failed to subpoena a key witness, (3) the trial court erred when it failed to conduct a hearing in accordance with *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), (4) the court erred when it denied trial counsel's request to make an offer of proof to explain a key witness' absence at trial, and (5) the court subjected him to double enhancement at sentencing when it considered a factor in aggravation that was inherent in the offense. For the reasons that follow, we disagree and affirm.

## I. BACKGROUND

¶ 4  In February 2015, the State charged defendant with unlawful delivery of a controlled substance (720 ILCS 570/401(e) (West 2014)), which was later amended to subsection (d) (720 ILCS 570/401(d) (West 2014)). The charge alleged that, on or about November 4, 2014, defendant knowingly delivered less than one gram of a substance containing cocaine to Coartney Barton, a police confidential source.

### A. Pretrial Proceedings

¶ 6  In May 2015, the day before trial, defendant tendered a witness list that contained only the name of Katrina Ross, his girlfriend. (Defendant's theory throughout trial was that the evidence was unclear as to who delivered the cocaine to Barton—him or Ross.)

¶ 7  On the day of trial, the trial court asked the parties, outside of the presence of the jury, whether any matters needed to be resolved before the court brought the jury back in. The following conversation took place regarding whether Ross would testify:

  "MR. REGNIER [Assistant State's Attorney]: There is, Judge. It is regarding disclosure of a witness yesterday regarding what she was going to say today.

  THE COURT: Who?

  MR. REGNIER: Katrina Ross.

  THE COURT: Okay.

  MR. REGNIER: And *** what—I would proffer based off talking to her today, she is planning on using her Fifth Amendment right.

  THE COURT: Okay.

  MR. REGNIER: There has [*sic*] been some discussions over what she can testify to before using that right or not. And if Your Honor does allow her to use that right, the State would probably pursue some kind of immunity, either use or qualified immunity for her.

  THE COURT: She is not listed as your witness.

  MR. REGNIER: Judge, we were aware of what she was going to say today as far as a summary of what her statements were going to be.

THE COURT: Well, I—

MR. REGNIER: And that is when we found out about the Fifth Amendment.

THE COURT: Okay. But you have not listed her as a witness. And if you are not planning on calling her, I don't see it being an issue for the State.

MR. REGNIER: Regarding her *** using use immunity or regarding her invoking her Fifth Amendment right while she is on the stand.

THE COURT: She can do that.

MR. REGNIER: The State's belief is that if she is going to testify about a transaction—she can't testify about that partially and then invoke her Fifth Amendment right and the State, now that we are aware of what she intends to testify to generally, a summary from speaking with her this morning, believes it would be the case.

THE COURT: Well, we will have to get into that when she starts testifying.

MR. REGNIER: Okay. Well—

THE COURT: I got to get the case going."

¶ 8                                                    B. The Trial

¶ 9        The following evidence was presented at defendant's May 2015 jury trial. In November 2014, Barton conducted a controlled buy for the proactive unit in Livingston County. Barton arranged the buy through text messages with a contact in her phone listed as "Katrina." Katrina Ross had been Barton's friend for many years and was in a relationship with defendant. Barton used this telephone number to contact defendant because it was how she communicated with him in the past. Barton sent a text message that asked if defendant "was good," meaning if he had any drugs. She received a positive response, and she told him that she would come by in the early afternoon. Barton believed Inspector Leland Brooke was present while she made the arrangements and that Brooke saw the text messages. (However, Brooke later testified that he was not present and did not see the messages.)

¶ 10       The police searched Barton's person and vehicle before she went to defendant's residence and found no contraband. The police gave her $40 of prerecorded money and an audio-recording device inside a cigarette pack, which she placed in her pocket. The police then followed her to defendant's residence.

¶ 11       Barton arrived at defendant's residence, knocked on the door, and Ross answered it. Barton walked into the living room and did not see defendant. Barton asked Ross if defendant had something for her, and Ross replied affirmatively and stated that defendant was in the bedroom. Barton knocked on the bedroom door, and defendant opened it. She handed him $40, and he gave her a small amount of crack cocaine. Defendant asked Barton for a ride to the pawnshop. She told him that she could give him a ride but needed to drop off the cocaine first.

¶ 12       Barton left and drove to the jail, and the police followed close behind. At the jail, Barton gave the police the purported crack cocaine, and they searched her again and found no contraband. The police transferred the white substance to a forensic scientist for testing, who, after a series of tests, concluded that the 0.1 grams of white substance contained cocaine.

¶ 13       The prosecution played the audio recording of the transaction for the jury. The entire conversation between Barton, Ross, and defendant lasted approximately one minute. When Barton arrived at the residence, she knocked on the door and Ross greeted her. Barton said,

"here," and after a few seconds, she mentioned defendant. Ross yelled, "Oh! Babe!" Defendant said something to Ross, but what he said is unclear from the recording. Ross responded, "Do you have something for Cornelia?" (Cornelia is a nickname that Ross used for Barton.) Defendant replied, "Yeah, but ask her if she can run me to the pawnshop real quick." Ross relayed the request to Barton, in which she said she could after she dropped off the drugs. Ross suggested that defendant should just ride with Barton, but he interjected and said that he would wait because he did not "want nobody seeing [his] face."

¶ 14        In between testimony, the trial court held a recess. Outside the presence of the jury, the court instructed the parties to read *People v. Human*, 331 Ill. App. 3d 809, 773 N.E.2d 4 (2002), to determine whether a party may call a witness it believes will invoke the fifth amendment privilege. When the parties returned from the recess, the court asked them if they had any questions about Ross. The following conversation took place:

> "MR. MASON [Defense counsel]: At this time, no. I have told her to go talk to Mr. Morgan[, the public defender].
>
> THE COURT: Okay. And we'll take it up.
>
> MR. MASON: I've reviewed the case that you gave me that you referred to earlier.
>
> THE COURT: Yes, yes.
>
> MR. MASON: Told her what I thought it meant.
>
> THE COURT: Okay.
>
> MR. MASON: And I believe she was going to talk to Mr. Morgan.
>
> THE COURT: All right. Very good. Is she under subpoena?
>
> MR. MASON: No. And I think that makes a difference, too.
>
> THE COURT: Yes. I believe it does."

¶ 15        The trial resumed without Ross being called to testify. The jury found defendant guilty of unlawful delivery of a controlled substance (720 ILCS 570/401(d) (West 2014)).

¶ 16                                    C. Posttrial Proceedings

¶ 17        In June 2015, defense counsel filed a motion for a new trial and argued, among other things, (1) the State failed to prove defendant guilty beyond a reasonable doubt, (2) Barton's testimony was not supported by the audio recording, and (3) Ross was present for a portion of the trial and "was not called as a defense witness although she could have provided testimony contradicting testimony of *** Barton as shown by the notarized statement of *** Ross attached hereto. Ms. Ros [*sic*] had been present at the trial during the morning but did not return after lunch." Ross's notarized statement stated the following:

> "I Katrina Pauline Ross being of sound mind and in a sober state am writing this to claim responsibility for my actions. On November 4, 2014[,] I Katrina Ross exchanged a $40 bag of cocaine for two $20 bags of heroin with Coartney Barton. When this was done without [defendant] knowing. This is all supported by the audio. This transaction was within the first 10 seconds of the audio when Ms. Barton enters my home. When [defendant] was asked if he had something for "Cornelia" it was referring to $10 the gas money she needed that evening to go to Lexington IL where she worked at McDonald's. I declare that this are [*sic*] true and correct."

- 4 -

¶ 18    In July 2015, the trial court held a hearing on the motion for a new trial. Defense counsel asked the court to allow Ross to testify. The State objected, arguing that Ross's testimony was not newly discovered evidence. In response, defense counsel stated if the court would allow her to testify, she would explain why she did not testify at trial. The court sustained the State's objection, recognizing that Ross was never subpoenaed or called to testify, and there was no reason why Ross could not have testified earlier. Defense counsel asked to make an offer of proof, and the following discussion took place:

"MR. MASON: May I make a proffer as to what [Ross's] testimony would be today?

THE COURT: You may. Yes.

MR. MASON: It would be that she—

THE COURT: Well, I'm sorry to interrupt. There is an affidavit attached. Would she testify consistent with her affidavit?

MR. MASON: Yes, Your Honor.

THE COURT: Okay. So I'll allow you to make that proffer for the record that her testimony would be consistent.

MR. MASON: Okay. She would testify consistent with that.

THE COURT: Okay.

MR. MASON: Beyond that, she would have testified as to why she did not, why she did leave rather than staying around to testify.

THE COURT: All right. Any other argument on the motion?

MR. MASON: No. I think the other elements were all argued at the closing at the trial."

¶ 19    The trial court denied defendant's motion and proceeded to sentencing. The court sentenced him to 25 years in prison, and in explaining its sentence, it stated in relevant part, as follows:

"I think you recognize just the out of control epidemic in our community and across the State and I think across the country with heroin addiction; and we are just losing the battle big time. I think there's been four or five overdoses in this county in the last several months from drug addiction. People that I've set a bond on have bonded out and overdosed and died. That bothers me tremendously as a person in this community.

And I'm saying that because I recognize that [defendant] and based upon the information in the presentence investigation report [(PSI)] clearly has struggled forever with substance abuse addictions and not just heroin. Cocaine, alcohol. You know, your PSI is just a nightmare. It just, it's really heartbreaking. And you were dealt with what I would say is a really, really crappy hand.

* * *

But dealing drugs threatens serious harm within our community, not just to the person that's doing the drugs who very well could overdose but to the responders when they are addressing people with overdoses. That it creates potential for accidents. They are responding to an overdose, and that takes them away from other crimes. So, I mean—or not crimes but other investigations or calls that they can be responding to. It has a ripple effect in the community when you deal drugs."

¶ 20    In July 2015, defendant filed a motion to reconsider the sentence, arguing the trial court should have given more consideration to his history of addiction and should have imposed a lesser sentence. The court denied the motion.

¶ 21    This appeal followed.

II. ANALYSIS

¶ 23    Defendant raises several issues on appeal, and we address them in turn.

A. Sufficiency of the Evidence

¶ 25    Defendant argues the State failed to prove him guilty beyond a reasonable doubt because (1) its key witness's testimony contradicted the audio recording of the transaction and (2) circumstantial evidence implicated another person who was present during the transaction. The State counters that it presented sufficient evidence to prove defendant guilty beyond a reasonable doubt. We agree with the State.

¶ 26    When a reviewing court considers a challenge to the sufficiency of the evidence, it must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the required elements of the offense proved beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48, 1 N.E.3d 888. It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224, 920 N.E.2d 233, 240 (2009). Accordingly, a reviewing court will not substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Bradford*, 2016 IL 118674, ¶ 12, 50 N.E.3d 1112. "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67, 23 N.E.3d 325.

¶ 27    Defendant first argues the State's evidence was insufficient because the State did not introduce any evidence linking him to Ross's telephone number (citing *People v. Walker*, 2016 IL App (2d) 140566, ¶¶ 11-12, 60 N.E.3d 101). In *Walker*, the defendant's convictions stemmed from four different transactions for the sale of cocaine to an undercover police officer. *Id.* ¶ 1. On appeal, the defendant challenged the fourth transaction because it was the only instance arranged solely through text messages. *Id.* The defendant argued that the State did not meet its burden because it needed to prove that he owned the telephone associated with the phone number. The Second District disagreed, finding that compelling circumstantial evidence indicated that the defendant sent the text messages, such as the prior transactions that he arranged using the same telephone number. *Id.* ¶ 12.

¶ 28    *Walker* hardly supports defendant's contention in this case. Further, *Walker* is distinguishable because the State prosecuted the defendant in that case on the theory of accountability and the text messages were the sole evidence to identify that defendant.

¶ 29    In this case, the text messages were not the sole evidence that incriminated defendant. Instead, the text messages corroborated the audio recording and Barton's testimony. Considering the circumstances of the transaction as a whole, the State did not need to provide evidence directly linking defendant to the telephone.

¶ 30    Defendant next argues that the State's evidence was insufficient because Barton testified she sent the text messages in Brooke's presence, but Brooke denied that he was present when Barton sent the messages. This discrepancy lacks the significance defendant claims. The jury heard the evidence and was put on notice of any discrepancies in the State's case. We reiterate that the jury bore the responsibility to assess the credibility of the witnesses, to resolve any discrepancies in the testimony, and to draw reasonable inferences from the evidence. *Siguenza-Brito*, 235 Ill. 2d at 224, 920 N.E.2d at 240. This discrepancy of which defendant complains was hardly a game-changer. The jury could simply have concluded that either Barton or Brooke was innocently mistaken about whether Brooke was present when Barton sent the text messages, and either way, it possessed no great significance.

¶ 31    Defendant also contends that the State's evidence was insufficient because there was no visual surveillance of the controlled buy. However, defendant fails to cite any authority to support this contention or further develop this argument, and we conclude it lacks any merit.

¶ 32    Defendant last argues that the State's evidence was insufficient because Barton's testimony was inconsistent with the audio recording. Both parties contend that the recording supports their respective positions. For example, defendant suggests that when Barton asked to speak with defendant, Ross's response of "oh" indicates that a meeting between defendant and Barton was an afterthought and not the main purpose of Barton's visit. The State argues that defendant's voice becomes clearer on the audio recording (indicating he was getting closer to Barton), which establishes that the exchange occurred at that time. In response to these arguments, we note that it is the jury, not this court, who is called upon to draw such inferences.

¶ 33    This court's decision in *People v. Hadden*, 2015 IL App (4th) 140226, ¶¶ 28-29, 44 N.E.3d 681, is instructive. In *Hadden*, this court stated, in relevant part, as follows:

    "We note that deferring to the jury is particularly important when the jury is considering an audio-recorded statement as opposed to a written transcript. Spoken language contains more communicative information than the mere words because spoken language contains 'paralanguage'—that is, the 'vocal signs perceptible to the human ear that are not actual words.' Keith A. Gorgos, *Lost in Transcription: Why the Video Record Is Actually Verbatim*, 57 Buff. L. Rev. 1057, 1107 (2009). Paralanguage includes 'quality of voice (shrill, smooth, shaky, gravely, whiny, giggling), variations in pitch, intonation, stress, emphasis, breathiness, volume, extent (how drawn out or clipped speech is), hesitations or silent pauses, filled pauses or speech fillers (e.g., "um/uhm," "hmm," "er"), the rate of speech, and extra-speech sounds such as hissing, shushing, whistling, and imitations sounds.' [*Id.*] at 1108. The information expressed through paralanguage is rarely included in the transcript, as there is generally no written counterpart for these features of speech. [*Id.*] at 1109.

    The jury has the responsibility to interpret the paralanguage and draw the appropriate inferences therefrom. In this case, the jury and this court both have had access to the same recordings of defendant's conversations with Lyons and Luster. However, we might reach different conclusions about the meaning of the conversations based on differing interpretations of the paralanguage involved. *** [T]his court is obliged to defer to the jury's interpretations." *Id.*

¶ 34    Thus, based upon both Barton's testimony and the audio recording, we conclude that the State presented sufficient evidence for the jury to find beyond a reasonable doubt that defendant sold Barton the cocaine. In support of our conclusion, we note that whether the

paralanguage of the audio recording was consistent with Barton's testimony was for the jury to decide.

¶ 35                                B. Effective Assistance of Counsel

¶ 36    Defendant argues he received ineffective assistance of counsel when his trial counsel failed to subpoena Ross, who would have provided exculpatory testimony. The State argues that defendant's trial counsel acted reasonably by deciding not to call Ross to testify because Ross planned to invoke her fifth amendment right against self-incrimination. Alternatively, the State argues the record is insufficient to resolve this claim on direct review.

¶ 37    A criminal defendant has a constitutional right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To establish a claim of ineffective assistance of counsel, a defendant has the burden to show that his contention satisfies the two-pronged test under *Strickland v. Washington*, 466 U.S. 668, 687 (1984): (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance resulted in prejudice to the defendant. More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceedings would have been different. *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767. Failure to satisfy either prong of the *Strickland* test precludes a finding of ineffectiveness. *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601.

¶ 38    "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. The Illinois Supreme Court has "made it clear that a reviewing court will be highly deferential to trial counsel on matters of trial strategy, making every effort to evaluate counsel's performance from his perspective at the time, rather than through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344, 864 N.E.2d 196, 216 (2007). Further, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *People v. Manning*, 241 Ill. 2d 319, 334, 948 N.E.2d 542, 551 (2011) (quoting *Strickland*, 466 U.S. at 689). Counsel's strategic decisions "are virtually unchallengeable." *Id.* at 333.

¶ 39    In *People v. Veach*, 2017 IL 120649, ¶ 46, the Illinois Supreme Court wrote that ineffective assistance of counsel claims may sometimes be better suited to collateral proceedings "but only when the record is incomplete or inadequate for resolving the claim. The reason is that in Illinois, defendants are required to raise ineffective assistance of counsel claims on direct review if apparent on the record." An example of a case in which the Illinois Supreme Court deemed the record before it insufficient to address the issue of ineffective assistance of counsel on direct appeal is *People v. Bew*, 228 Ill. 2d 122, 135, 886 N.E.2d 1002, 1010-11 (2008). Citing *Massaro v. United States*, 538 U.S. 500, 504-05 (2003), the supreme court in *Bew* concluded that even though the defendant in that case had, on the record before it, "failed to prove ineffective assistance of counsel, we note that defendant may raise these alternative grounds for suppression under the Post-Conviction Hearing Act (725 ILCS 5/122-1 through

122-8 (West 2002)). This disposition allows both defendant and the State an opportunity to develop 'a factual record bearing precisely on the issue.' " *Bew*, 228 Ill. 2d at 135, 886 N.E.2d at 1009-10.

¶ 40 In this case, defendant's claim of ineffective assistance of counsel is better suited for resolution in a collateral proceeding—specifically, by defendant's filing a petition for postconviction relief. Defendant argues that if Ross had been called to testify, "it is not likely" that she would have exercised her fifth amendment privilege because she signed a notarized affidavit (weeks later, we note) claiming responsibility. Further, defendant suggests that even if Ross planned to invoke her fifth amendment privilege, the State indicated it would grant her immunity if she testified fully.

¶ 41 The State responds that defendant has not shown ineffective assistance because it would have been improper for trial counsel to call Ross to testify when counsel knew Ross planned to invoke her fifth amendment privilege (citing the case the trial court instructed the parties to read, *Human*, 331 Ill. App. 3d at 819, 773 N.E.2d at 13 ("This court has repeatedly held that it is improper for a party to call a witness whom it has reason to believe will invoke his fifth amendment privilege before the jury ***.")). The State also argues Ross's affidavit does not support defendant's claim because the affidavit does not explain what she would have testified to at trial.

¶ 42 The important point in this appeal is that the record does not indicate (1) what Ross told defendant's trial counsel during trial as to why she did not want to testify and (2) how counsel evaluated what Ross told him and what options counsel thought he then had regarding whether to call Ross. Although the parties speculate in their briefs on these matters, we will not because doing so would be a disservice to both parties. They both deserve an adjudication based on a record that is complete and adequate, not on judicial speculation. We reiterate that the focus of any inquiry into whether defendant's trial counsel was ineffective would be on what counsel was told and believed during trial when the question of whether counsel should call Ross as a defense witness became ripe. What Ross said after trial, including her affidavit, is not pertinent.

¶ 43 Accordingly, we decline to address defendant's claim of ineffective assistance of counsel on direct review and note defendant may raise his claim pursuant to the Act. If defendant were to take that course of action, then an opportunity to develop a factual record bearing precisely on the issues in question would become available.

¶ 44                                C. The *Krankel* Claim

¶ 45 Defendant argues the trial court erred by failing to conduct a *Krankel* hearing, noting that trial counsel seemed to argue his own ineffectiveness in a posttrial motion.

¶ 46 In *Krankel*, 102 Ill. 2d at 187, 464 N.E.2d at 1048, the defendant filed a *pro se* posttrial motion alleging his trial counsel was ineffective for failing to contact an alibi witness or present an alibi defense at trial. The defendant argued his *pro se* motion, which the trial court denied. *Id.* at 188-89, 464 N.E.2d at 1048-49. On appeal, the State conceded that the defendant should have had new counsel represent him on the motion. *Id.* at 189, 464 N.E.2d at 1049. The supreme court agreed and remanded the case for a new hearing on the motion with different counsel to determine whether the defendant was denied the effective assistance of counsel. *Id.*

¶ 47 In interpreting *Krankel*, the supreme court has stated, "[W]hen a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *People v. Moore*, 207 Ill. 2d 68, 77-78, 797 N.E.2d 631, 637 (2003). On review, an appellate court must determine whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations. *Id.* at 78, 797 N.E.2d at 638.

¶ 48 In this case, defendant argues that when his trial counsel alleged his own ineffectiveness in the motion for a new trial for failing to call Ross to testify, the trial court should have conducted a *Krankel* inquiry *sua sponte*. The State maintains that the record does not reveal strong evidence of trial counsel's incompetence; therefore, the trial court was not required to conduct a *Krankel* inquiry.

¶ 49 *Krankel* and its progeny apply *only* to posttrial claims raised by a defendant *pro se*. See *id.* at 78-79, 797 N.E.2d at 638. As the supreme court has noted, "[t]he common law procedure developed from our decision in *Krankel* is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel." *People v. Jolly*, 2014 IL 117142, ¶ 29, 25 N.E.3d 1127; see also *People v. Ayres*, 2017 IL 120071, ¶ 11. Nevertheless, defendant argues that the fact he did not raise a *pro se* claim of ineffectiveness does not bar the trial court from conducting a *Krankel* inquiry (citing *People v. Williams*, 224 Ill. App. 3d 517, 586 N.E.2d 770 (1992)). We disagree.

¶ 50 In *Williams*, the defendant's trial counsel revealed in a posttrial motion that he had additional witnesses who were not called at trial who could have provided critical support to the defendant's alibi defense. *Id.* at 524, 586 N.E.2d at 774. The First District noted that the "[d]efendant did not file a *pro se* petition or write to the judge claiming ineffective assistance of counsel. Nevertheless, the trial judge's strong comments to counsel at the hearing indicate that he was made aware of counsel's possible neglect." *Id.* The court remanded the case for a *Krankel* hearing, holding, "Where there is a clear basis for an allegation of ineffectiveness of counsel, a defendant's failure in explicitly making such an allegation does not result in a waiver of a *Krankel* problem." *Id.*

¶ 51 We decline to follow this loose and broad reading of *Krankel*. Instead, consistent with the supreme court's precedent, we hold that where a defendant fails to raise a *pro se* posttrial claim of ineffective assistance of counsel, the trial court need not—and ought not—conduct a *Krankel* hearing. We reiterate that a *Krankel* hearing is a term of art to describe the hearing the court must conduct when a defendant *pro se* has raised a posttrial claim regarding his counsel's ineffective assistance. In that hearing, the court needs to determine whether the defendant's allegations "show possible neglect of the case." *Moore*, 207 Ill. 2d at 78, 797 N.E.2d at 637. If so, the court should appoint new counsel for the defendant. *Id.* It should be remembered that this is the *only* issue to be resolved by a *Krankel* hearing. If the court determines that new counsel need be appointed, then (depending upon what that new counsel may file) the court may later need to conduct a hearing on a claim that defendant's trial counsel was ineffective. If the court determines that new counsel need not be appointed, then the court should proceed to address the normal posttrial matters.

¶ 52 Because defendant did not raise a *pro se* posttrial claim of ineffective assistance of counsel, there was no reason for the trial court to conduct a *Krankel* hearing. Further, we note it is

inappropriate for trial counsel to argue his own ineffectiveness. See *People v. Lawton*, 212 Ill. 2d 285, 296, 818 N.E.2d 326, 333 (2004) (explaining that a lawyer faces an "inherent conflict of interest" when he argues his own ineffectiveness).

¶ 53                                    D. The Offer of Proof

¶ 54    Defendant argues that the trial court erred when it denied defense counsel's request to make an offer of proof as to Ross's testimony that would have explained her absence at trial. The State argues (1) the issue is waived and, alternatively, (2) the court's ruling was not error.

¶ 55    The right to make an offer of proof to show the relevancy of certain evidence affords the trial court the opportunity to make an informed decision. *People v. Pressley*, 160 Ill. App. 3d 858, 864-65, 513 N.E.2d 921, 926 (1987). "Illinois courts of review have not hesitated to remand cases for new trials where circuit judges have mishandled attempts by defendants to make offers of proof on excluded evidence." *People v. Thompkins*, 181 Ill. 2d 1, 10, 690 N.E.2d 984, 989 (1998). A trial court's decision to deny an offer of proof will be reversed if the court abused its discretion. *Id.* at 12, 690 N.E.2d at 989. "[A]n abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *People v. McDonald*, 2016 IL 118882, ¶ 32, 77 N.E.3d 26.

¶ 56    At defendant's hearing on his motion for a new trial, trial counsel requested that Ross testify to explain why she was absent at trial. The trial court denied this offer of proof because it found such testimony would have been inappropriate and there was no reason why Ross could not have testified earlier. (We note the court did allow trial counsel to make a proffer that Ross would have testified consistently with her affidavit and she would have explained her absence from the trial—which the court did not prohibit counsel from expanding on.)

¶ 57    The State responds that defendant waived this issue because he affirmatively acquiesced to the trial court's ultimate decision on the offer of proof when, after the trial court denied his offer of proof, he stated that he did not have any additional arguments on the motion. See *People v. Dunlap*, 2013 IL App (4th) 110892, ¶¶ 10-11, 992 N.E.2d 184 (holding that when trial counsel fails to present argument in the trial court, defendant's argument on appeal is waived).

¶ 58    Waiver aside, defendant's argument is beside the point. Defendant argues the offer of proof would have explained Ross's absence at trial. However, this information is irrelevant. As previously explained, Ross's testimony weeks after the trial as to why she was absent from the trial has no bearing on the issues defendant raises on appeal. The pertinent information would come from what Ross told trial counsel during or before trial as to why she did not want to testify.

¶ 59    Defendant's argument regarding the offer of proof is really an extension of his claim that his trial counsel was ineffective for not calling Ross to testify as a defense witness. We earlier concluded that this argument is not appropriate for resolution on the record now before us and suggested that defendant could pursue this claim by filing a postconviction petition, which (if a hearing were to then occur) would provide an opportunity for Ross and defendant's trial counsel (and perhaps other witnesses, as well) to testify regarding why Ross was not called to testify at defendant's trial as a defense witness.

¶ 60    Accordingly, we need not further address defendant's argument regarding the offer of proof. His filing of a postconviction petition would render this issue moot.

¶ 61                        E. Defendant's Claim of Double Enhancement

¶ 62    Last, defendant argues the trial court erred by subjecting him to double enhancement at sentencing when it considered societal harm caused by drugs and those who deal drugs in the community because the harm is already inherent in the offense. The State argues that (1) defendant forfeited this issue and, alternatively, (2) the court properly sentenced him.

¶ 63    "A reasoned judgment as to the proper sentence to be imposed must be based upon the particular circumstances of each individual case." *People v. Perruquet*, 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884 (1977). These circumstances include the defendant's criminal history, the defendant's potential for reform, and the recognized interest in protecting the public and providing a deterrent. *People v. Hestand*, 362 Ill. App. 3d 272, 281, 838 N.E.2d 318, 326 (2005). However, a factor implicit in the offense of which the defendant has been convicted cannot be used as an aggravating factor. *Siguenza-Brito*, 235 Ill. 2d at 232, 920 N.E.2d at 245; see also *People v. Phelps*, 211 Ill. 2d 1, 11-12, 809 N.E.2d 1214, 1220 (2004) ("[A] single factor cannot be used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed." (Internal quotation marks omitted.)). Such dual use of a single factor is a "double enhancement." *Phelps*, 211 Ill. 2d at 12, 809 N.E.2d at 1220.

¶ 64    "The prohibition against double enhancements is based on the assumption that, in designating the appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense." *Id.* However, "[t]here is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22, 979 N.E.2d 1014. Because double enhancement is a rule of statutory construction, our review is *de novo*. *People v. Raney*, 2014 IL App (4th) 130551, ¶ 34, 8 N.E.3d 633.

¶ 65    Defendant argues the trial court erred by subjecting him to double enhancement at sentencing when it used the societal harm caused by drugs and those who deal drugs in the community as a factor in aggravation. Defendant contends such harm is inherent in the unlawful delivery of a controlled substance charge.

¶ 66    The State responds that defendant forfeited this argument because he failed to raise it in the trial court. See 730 ILCS 5/5-4.5-50(d) (West 2014) ("A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed with the circuit court clerk within 30 days following the imposition of sentence."); *People v. Heider*, 231 Ill. 2d 1, 15, 896 N.E.2d 239, 247 (2008) ("[S]entencing issues must be raised in a postsentencing motion in order to preserve them for appellate review."). Defendant concedes that he has forfeited the sentencing issue by failing to raise it in his motion to reconsider the sentence or to object at the sentencing hearing. However, he argues for plain-error review.

¶ 67    The plain-error doctrine allows a court to disregard a defendant's forfeiture and consider unpreserved error in two instances:

"(1) where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error and (2) where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process ***." *Belknap*, 2014 IL 117094, ¶ 48, 23 N.E.3d 325.

¶ 68    Defendant argues plain error applies to his case because the alleged error impinged on his fundamental right to liberty. However, we decline to undertake such an analysis in this case. A defendant's claim that the trial court's alleged error in imposing sentence impinged on his "fundamental right to liberty" are not subject to plain-error review. *People v. Rathbone*, 345 Ill. App. 3d 305, 310-11, 802 N.E.2d 333 (2003).

¶ 69    Similarly, in *People v. Ahlers*, 402 Ill. App. 3d 726, 733, 931 N.E.2d 1249, 1254 (2010), the defendant argued the plain-error doctrine applied to his case because the challenged error interfered with his fundamental right to liberty. This court rejected this argument, explaining, as follows:

"[T]he plain-error doctrine is not a general savings clause, to be used as a means by which to preserve all errors affecting substantial rights that have not been brought to the trial court's attention. [Citation.] And we note that defendant's contention here is essentially the same contention this court rejected in *Rathbone*. *Rathbone*, 345 Ill. App. 3d at 311, 802 N.E.2d at 338 (holding that it is not sufficient to 'simply state that because sentencing affects the defendant's fundamental right to liberty, any error committed at that stage is reviewable as plain error'). Nonetheless, as previously stated, sentencing errors raised for the first time on appeal are reviewable as plain error if (1) the evidence was closely balanced or (2) the error was sufficiently grave that it deprived the defendant of a fair sentencing hearing." *Id.* at 734, 931 N.E.2d at 1256.

See also *People v. Hanson*, 2014 IL App (4th) 130330, ¶¶ 27-29, 25 N.E.3d 1.

¶ 70    Defendant asserts that plain-error review is appropriate in this case because the evidence at the sentencing hearing was "closely balanced." We disagree, noting that the trial court sentenced defendant as a Class X offender because of his extensive record of convictions of serious offenses. The presentence report the court considered at the sentencing hearing revealed that defendant, who was then 42 years old, had eight prior felony convictions, including separate convictions for armed robbery, residential burglary, and manufacturing and delivery of a controlled substance. He had also served four prior, separate prison sentences, and Department of Corrections records showed that, during one of his prison sentences, defendant was cited for 56 disciplinary reports, 10 of which were major.

¶ 71    Additionally, we agree with the State that the trial court's comments, when placed in context, were clearly in response to defense counsel's argument that (1) defendant's conduct neither caused nor threatened serious physical harm and (2) defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to another.

¶ 72    Accordingly, defendant's forfeited claim is not subject to plain-error review. In so concluding, we note this decision does not conflict with *People v. Lewis*, 234 Ill. 2d 32, 36, 912 N.E.2d 1220, 1223 (2009), in which the supreme court reversed this court's decision that the defendant's $100 street-value fine in that case was *de minimis* and, therefore, not subject to plain-error review. *Id.* at 36, 912 N.E.2d at 1223. The supreme court rejected this court's *de minimis* exception because the supreme court concluded that such an exception would be

difficult to implement and was inconsistent with the fundamental fairness concerns of the plain-error doctrine. *Id.* at 48, 912 N.E.2d at 1230. However, defendant's argument in this case does not involve a *de minimis* matter, and we conclude that a finding that he forfeited this argument is consistent with *Lewis*.

¶ 73 Even if defendant's claim were not forfeited, it is without merit. Defendant relies on this court's decision in *People v. Atwood*, 193 Ill. App. 3d 580, 549 N.E.2d 1362 (1990), to support his contention that societal harm is a factor inherent in the offense of unlawful delivery of a controlled substance. However, this court has since held that factors inherent in the offense can sometimes be considered, along with other factors in aggravation and mitigation, as part of the nature and circumstances of the case. See *People v. Winchester*, 2016 IL App (4th) 140781, ¶ 81, 66 N.E.3d 601; see also *Raney*, 2014 IL App (4th) 130551, ¶ 35, 8 N.E.3d 633. Thus, a trial court may discuss the impact a drug offense has on the community without subjecting the defendant to double enhancement. We agree with the Second District Appellate Court where it wrote the following:

> "It is not improper *per se* for a sentencing court to refer to the significant harm inflicted upon society by drug trafficking. It is important that defendants understand why they are subject to the penalties provided by law and why they have received their particular sentences. The harm that the crime causes society is an inherent consideration which underlies the basic range of penalties specified by the legislature. Commenting on the problems caused by drug-related crime encourages rehabilitation by providing a context in which a defendant may develop feelings of remorse. We do not wish to discourage courts from addressing such relevant considerations, but we suggest that sentencing courts attempt to segregate such general commentary from the balancing of sentencing factors." *People v. McCain*, 248 Ill. App. 3d 844, 852, 617 N.E.2d 1294, 1300 (1993).

¶ 74 In conclusion, defendant's double-enhancement argument is not subject to plain-error review, and even if it were, it lacks merit.

¶ 75 III. CONCLUSION

¶ 76 For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 77 Affirmed.